Bettman, J.
 

 By this action in mandamus relator, The Synod of Ohio of the United Lutheran Church in
 
 *238
 
 America, seeks to compel the issuance of a special permit to build a church in a class I district in the village of Upper Arlington. The comprehensive zoning ordinance adopted by the village commission in 1927, provides, section 5: “In class I districts, single family dwelling houses only * * * shall be permitted * * *. Provided that * * * churches, schools, public libraries, public museums, community center buildings, public recreation buildings, private clubs, or public parks and playgrounds may be erected and used within such district by special permit granted by the zoning commission and the village council * * After a course of negotiations extending over six months and involving applications to build on three different sites, the respondents, constituting the members of the village commission and the zoning commission of Upper Arlington, jointly refused to issue a permit to build a church on the site desired by the relator. Respondents in their resolution of June 24, 1940, formally denying relator’s application gave no reason for so doing, but they had previously resolved “that all applications for permits to erect churches in class I, or single family house districts, as long as class III, or business property is available, be refused.” Relator had purchased the property which is involved in this action after respondents had voluntarily by resolution suggested it as being “in our present judgment * * * suitable and appropriate for the erection of churches.”
 

 Relator challenges the constitutionality of the proviso of section 5 of the ordinance, by which the village commission sought to confer upon itself, acting jointly with the zoning commission, power to issue special permits for the erection of certain enumerated buildings, without prescribing any standards or guides to govern the exercise of this delegated power. Relator further claims that irrespective of this invalidity upon its face of this delegated power to issue permits, the exercise of the power in this particular instance has
 
 *239
 
 been so arbitrary and unreasonable as to constitute a confiscation and deprivation of property rights without due process of law in violation -of Sections 1 and 19, Article I of the Ohio Constitution, and the Fourteenth Amendment to the federal Constitution.
 

 As to relator’s first point, although there may be doubt as to the constitutionality of this portion of the ordinance by which the legislative body of a municipality has sought to delegate to itself, acting jointly with others in an administrative capacity, an unqualified permit-issuing power unaccompanied by any legislative prescription of the circumstances and standards which shall govern its exercise, we do not believe that relator in this action has any standing to raise this objection. Although the prayer of relator’s petition and the Court of Appeals’ journal'entry refer to the issuance of a “building permit,” and the village building inspector is joined as a respondent, the theory of the action is obviously not to compel the building inspector to issue an ordinary building permit. It is to compel the village and zoning commissions which are the named respondents, to issue the “special permit” required hy section 5 of the zoning ordinance for the erection of churches and certain other enumerated structures in class I districts. The relator cannot be heard to question the validity of the very power the exercise of which relator is, by this action, asking the court to compel.
 
 Wall
 
 v.
 
 Parrot Silver & Copper Co.,
 
 244 U. S., 407, 61 L. Ed., 1229, 37 S. Ct., 609.
 

 Our inquiry is therefore narrowed to determining whether respondents ’ action in this particular instance has been so arbitrary and bears so insubstantial a relation to the objectives legitimately to be pursued under comprehensive zoning laws, that it offends against the state or federal Constitution. Specifically the crucial question is whether the local zoning authorities can, consistently with the provisions of the ordinance they are administering and with the constitu
 
 *240
 
 tional guaranties of the enjoyment of private property, refuse a special permit for the erection of a church in a class I district, in pursuance of a general policy adopted formally by resolution, “that all applications for permits to erect churches in class I, or single family house districts, as long as class III, or business property is available, be refused.”
 

 Respondents have taken the position that this general exclusion of churches results from the language of the zoning ordinance itself. They have interpreted section 5 of the ordinance to mean that churches, schools, libraries, etc., are to be absolutely excluded from class I districts except insofar as this prohibition may be lifted by the issuance of a special permit. We seriously question the constitutionality of any enactment that seeks flatly to prohibit the erection of churches in residential districts. But we believe that under a proper and natural construction of the language of the ordinance here involved, this question does not arise. As a guide to the construction of enactments which seek to restrict the use of private property, this court has said, “No presumption is indulged in favor of the restriction or limitation of an owner in the use of his premises. Statutes or ordinances which restrain the exercise of such fight, or impose restrictions upon the use of private property, will always be strictly construed, and the scope of such statutes or ordinances cannot be extended to include limitations not therein clearly prescribed.”
 
 State, ex rel. Ice & Fuel Co.,
 
 v.
 
 Kreuzweiser, Inspector,
 
 120 Ohio St., 352, 356, 166 N. E., 228. Section 5 of the zoning-ordinance here involved, opens with the negative restriction that: “In class I districts, single family dwelling houses only * * * shall be permitted.” But this is expressly qualified by an affirmative proviso: “Provided that * * * churches, schools, public libraries
 
 *
 
 * *, may be erected and used within such district by special permit granted by the zoning commis
 
 *241
 
 sion and the village council * * V’ There is nothing in this language which compels a construction that the zoning board may keep all churches out of class I districts. Upon the contrary, the thrust of this language is that churches are to be admitted, but by special permit, under reasonable restrictions.
 

 It is urged by respondents that even though the original ordinance itself does not outlaw churches in class I districts, yet the various resolutions of exclusion adopted by the joint commission may be regarded as legislative amendments to the ordinance itself. We recognize that under section 5, the body which originally enacted the ordinance, and which still has the right to amend it, is also the body which, acting jointly with the zoning commission, has control over the issuance of special permits. But when the village commissioners sit in joint session with the zoning commissioners upon the issuance of building permits under the zoning ordinance, they are acting in an administrative capacity. The statute authorizing the commission plan of municipal government expressly provides with respect to meetings of the commission that “no legislative business shall be considered or acted upon at administrative sessions.” Section 3515-1, Article III, Section 3, General Code (103 Ohio Laws, 770). The village commissioners therefore cannot suddenly transform themselves from administrators to legislators in order to foe released from the restrictions that are imposed on the acts of administrative officers. They may not exceed or arbitrarily exercise these delegated powers merely because in their legislative capacity they originally clothed themselves with these powers, and could, by formally amending the ordinance, alter them.
 
 State, ex rel. Dickson,
 
 v.
 
 Harrison, Bldg. Inspector,
 
 161 La., 218, 108 So., 421.
 

 Moreover, even acting in its administrative capacity, the commission has determined that the general pattern of zoning will not be violated by permitting a
 
 *242
 
 church to be erected in a class I district. Scarcely two and a half months before the special permit was finally refused, respondents had by resolution determined that the very site on which relator is now seeking to locate its church, would “in our present judgment * * * be suitable and appropriate for the erection of churches.” Although this resolution was subsequently repealed and declared to have been “advisory only,” and although its adoption may not, under the circumstances, rise to the dignity of an estoppel, it does at least give a strong indication that in the minds of a majority of the respondents there was no very clear repugnancy between the erection of a church in a class I district, and' the general pattern of uses prescribed in the ordinance.
 

 The administrative policy embodied in respondents’ pivotal resolution that “all applications for permits to erect churches in class I, or single family house districts, as long as class III, or business property is available, be refused,” amounts, in our opinion, to a suspension of the operation of the express proviso in the ordinance that “churches * * * may be erected and used within such district by special permit * * Zoning ordinances which seek to exclude churches from residential neighborhoods are comparatively rare. Bassett on Zoning (1940), page 200. But it is even more unusual for administrative officials to adopt such a program forbidding the use of class I property for church purposes, when they not only have no express legislative authority to do so, but, on the contrary, the ordinance which they are administering affirmatively provides that churches may be erected in such district.
 

 It is true that the comprehensive zoning ordinance upheld in
 
 Village of Euclid
 
 v.
 
 Ambler Realty Co.,
 
 272 U. S., 365, 71 L. Ed., 303, 47 S. Ct., 114, which may be regarded as the cornerstone of the modern law of use zoning, did exclude churches from both single and two-family residential districts. The Supreme Court of the
 
 *243
 
 United States, however, not only pointed out that it was simply validating the ordinance in its general scope” and not in detail, but, in addition, the court expressly removed from consideration that portion of the ordinance which restricted the use of property for church purposes, saying at page 385: ‘ ‘ * * * there is nothing in the record to suggest that any damage results from the presence in the ordinance of those restrictions relating to
 
 churches,
 
 schools, libraries and other public and semi-public buildings * * *. For present purposes the provisions of the ordinance in respect of these uses may, therefore, be put aside as unnecessary to be considered.” (Italics ours.) The
 
 Village of Euclid case,
 
 while deciding that commercial and industrial structures may, consistently with the Fourteenth Amendment, be excluded from residential districts, decides nothing with regard to the exclusion of humanitarian, public and semi-public uses like churches, schools and libraries.
 

 We have been unable to find any reported Ohio case, dealing directly with the exclusion of these humanitarian noncommercial uses from a residential district. In other jurisdictions such attempted exclusions by the zoning authorities have generally not survived court review.
 
 Washington, ex rel. Seattle Title Tr. Co.,
 
 v.
 
 Roberge, Supt.,
 
 278 U. S., 116, 73 L. Ed., 210, 49 S. Ct., 50, 86 A. L. R., 654;
 
 Women’s Kansas City St. Andrew Society
 
 v.
 
 Kansas City
 
 (C. C. A. 8), 58 F. (2d), 743 (both involving philanthropic homes for old people);
 
 Village of University Heights
 
 v.
 
 Cleveland Jewish Orphans’ Home
 
 (C. C. A. 6), 20 F. (2d), 743, 54 A. L. R., 1008 (orphans’ home);
 
 Roman Catholic Archbishop
 
 v.
 
 Baker,
 
 140 Ore., 600, 15 P. (2d), 391;
 
 Catholic Bishop of Chicago
 
 v.
 
 Kingery,
 
 371 Ill., 257, 20 N. E. (2d), 583 (parochial schools);
 
 City of Miami Beach
 
 v.
 
 State, ex rel. Lear,
 
 28 Fla., 750, 175 So., 537 (private school) ;
 
 Western Theological Seminary
 
 v.
 
 City of Evanston,
 
 325 Ill., 511, 156 N. E., 778 (theological seminary).
 

 
 *244
 
 The infrequency of the attempts of municipal authorities to prevent the erection of churches in residential districts is attested by the paucity of reported cases dealing with this precise question. We have found but three:
 
 Westminster Church
 
 v.
 
 Building Inspector of Omaha,
 
 108 Neb., 859, 189 N. W., 617;
 
 State, ex rel. Howell,
 
 v.
 
 Meador, Mayor,
 
 109 W. Va., 368, 154 S. E., 876;
 
 State, ex rel. Roman Catholic Bishop of Reno,
 
 v.
 
 Hill,
 
 59 Nev., 231, 90 P. (2d), 217. In all of these the decision was in favor of the church. In the Nebraska case the issue was the reasonableness of a zoning restriction that buildings in the particular district should not occupy more than 25 per cent of their lot area. But the decision of the court, that such a restriction was unreasonable, did not turn on the fact that the proposed building was a church rather than any other type of structure, it apparently being assumed that a church, as such, was not out of place in the residential district. In the West Virginia case the property upon which the church was built had by ordinance been designated as “residential property.” The ordinance further provided that “no public garage, filling station, store or other industry of any kind or character shall be built, constructed, operated or located upon any of the property hereinbefore designated as residential property.” In holding that a writ of mandamus should issue to compel the granting of a building permit for the church, the court concluded that “whether a city has constitutional authority, under legislátive permission, to exclude churches from residential sections, we are clearly of opinion that the zoning ordinance, under consideration, does not do so; its only purpose is to set apart residential as contra-distinguished from business property. ’ ’ The court also held that alleged increase in traffic congestion was not under the circumstances a sufficient ground for refusing the permit.
 

 The Nevada case,
 
 State, ex rel. Roman Catholic
 
 
 *245
 

 Bishop of Reno,
 
 v.
 
 Hill, supra,
 
 is the only case squarely involving the question now before us — whether a church, as such, can consistently with state and federal constitutional guaranties be excluded from a residential district. There, the zoning ordinance required that for the erection of anything but a dwelling or apartment house in a residential district, the applicant would have to get the consents of three-fourths of the property owners in the block, or if such consents could not be obtained, the permit could be granted by a majority vote of council. An action of mandamus was brought to compel the issuance by the inspector of buildings of a permit, after council had rejected the church’s application, which had been unsupported by the necessary consents from adjacent property owners. In a
 
 per curiam
 
 opinion awarding the petitioners a peremptory mandate, the court stated at page 239: “The validity of sections 7 and 8 of the zoning ordinance has been challenged on several grounds, but we have found it necessary to consider but one. The great weight of authority convinces us that these sections as applied to the property involved in this case, bear no substantial relationship to the promotion of the health, safety, morals, convenience, property [prosperity] or general welfare of the city of Reno, or of its residential district, and that they constitute an invasion of the property rights of petitioner corporation. [Citation of various cases involving humanitarian uses.] * * * As against these authorities, cases involving livery stables, garages, gasoline stations, funeral parlors, billboards, two-family residences, morgues, laundries, etc., afford us little aid in the instant case. The ■law distinguishes between such cases and those relating to churches, schools, parks and playgrounds, art galleries, library buildings, community center buildings, etc. In some, if not most zoning ordinances, churches are expressly classified in first residence districts. * * * The court holds these sections [of the
 
 *246
 
 zoning ordinance] invalid with reference to said application because they violate the due process provisions of both the Constitution of the United States and the Constitution of the state of Nevada.”
 

 By the terms of the act enabling municipalities in Ohio to adopt comprehensive zoning plans (Section 4366-7
 
 et seq.,
 
 General Code), there is granted a broad power of determining and establishing districts “on the basis of the nature or character of trade, industry, profession or other activity conducted or to be conducted therein, the number of persons, families or other group units to reside in or use them, the public, #«asi-public or private nature of the use thereof, or upon any other basis or bases relevant to the promotion of the public safety, health, morals, convenience, prosperity or welfare.” Section 4366-11, General Code. This final provision clearly indicates a legislative recognition that the restriction upon the uses of private property which can be imposed by local zoning authorities are limited to those which are designed to achieve some objective properly within the scope of the police power. As stated by the Supreme Court of the United States, “The governmental power to interfere by zoning regulations with the general rights of the land owner by restricting the character of his use, is not unlimited, and other questions aside, such restriction cannot be imposed if it does not bear a substantial relation to the public health, safety, morals, or general welfare.”
 
 Nectow
 
 v.
 
 City of Cambridge,
 
 277 U. S., 183, 188, 72 L. Ed., 842, 48 S. Ct., 447.
 

 In determining whether respondents’ administrative acts and policies may ibe upheld, it should be observed that the usual presumption of the validity of the acts of public boards and officials, does not apply to acts involving the forfeiture of an individual’s rights or the depriving him of the free use of his property. 22 Corpus Juris, 141;
 
 Deaver
 
 v.
 
 Napier,
 
 139 Minn., 219, 166 N. W., 187;
 
 Christ
 
 v.
 
 Fent,
 
 16 Okla., 375, 84 P.,
 
 *247
 
 1074. Applying this exception to a case like the one at bar, where public officials seek under a zoning ordinance to deny a landowner a particular use of his property, the highest court of Maryland has held that the board of zoning appeals has the burden of showing reasons sufficient to support its authority in refusing a building permit.
 
 Applestein
 
 v.
 
 Mayor and City Council of Baltimore,
 
 156 Md., 40, 47, 143 A., 666.
 

 What are the reasons advanced by the respondents to support their policy of excluding churches from the residential district, as long as sites in the business section are still available? Their principal objections flow from the fact that at regular intervals the church will bring together large groups of people, thereby allegedly causing increased noise and confusion, increased traffic congestion and parking difficulties, and an increased influx of strangers into the community. It is also said that the erection of a church would adversely affect property values of adjacent land. But according to the testimony of the member of the Upper Arlington zoning commission who most resolutely opposed the building of a church in the class I district, this impairment would be but a consequence of the factors already enumerated.
 

 As for increased noise, the church authorities have expressly agreed not to install bells or chimes. People going to and from church are not customarily rowdy or boisterous. On three sides of the proposed site of the church the neighbors would be insulated from what little disturbance there might be, by streets with a minimum dedicated width of 50 feet. Moreover, the surrounding property is still largely vacant, except for that occupied by a telephone exchange directly across one street and three four-family apartment houses diagonally across another.
 

 The objection that there will be possible traffic congestion caused by persons congregating for religious services has been expressly repudiated; in similar cir
 
 *248
 
 cumstances, as a ground for refusing to permit the erection of a church in a residential district.
 
 State, ex rel. Howell,
 
 v.
 
 Meador, supra.
 
 Here it appears that the church site is not only bounded by streets on three sides, one of them being as wide as any in the village, but there has also been an express agreement to set aside 25 per cent of the lot for a parking space, an area sufficient to accommodate 60 automobiles. Any perceptible increase in the traffic which might result from attendance at a church seating only 250 persons would occur mostly on Sunday mornings, a time when ordinary traffic would be greatly diminished, and any danger to children going to and from school entirely eliminated.
 

 Of all nonresidential uses, a small suburban church would seem to present a minimum of objections. All of the same considerations which have been urged against permitting this church in a residentiál neighborhood, were present in a far greater degree in the case of a parochial school or an orphans’ home, and yet they were held not to bear a sufficiently substantial relation to the public health, safety, morals or general welfare to warrant the exclusion of these institutions.
 
 Roman Catholic Archbishop
 
 v.
 
 Baker, supra; Village of University Heights
 
 v.
 
 Cleveland Jewish Orphans’ Home, supra.
 
 It must therefore be concluded that respondents’ supporting reasons for the attempted exclusion of the church cannot be justified on the score of the protection of public health and safety.
 

 How does the case stand with respect to the' protection of public morals and the general welfare? The church in our American society has traditionally occupied the role of both teacher and guardian of morals. Restrictions against churches could therefore scarcely be predicated upon a purpose to protect public morals. Over the generations we have seen American churches in the quiet, dignified surroundings of residential districts readily accessible to the members of the congre
 
 *249
 
 gation. Such churches as are now found in business sections were for the most part in residential neighborhoods when they were built, but the commercial life of the community has gradually crept up around them. Fully to accomplish its great religious and social function, the church should be integrated into the home life of the community which it serves. Churches in fitting surroundings are an inspiration to their members and to the general public. If located in the residential district — space, perspective, greenswards and trees aid in setting off the beauty of the building and thereby increasing its inspiration. To require that churches be banished to the business district, crowded alongside filling station's and grocery stores, is clearly not to be justified on the score of promoting the general welfare.
 

 When brought to an exact focus, what respondents are seeking to accomplish is the creation, by an administrative act, of exclusive residential subdivisions for private individuals. It is true that many people prefer not to reside next door to a church. But the way legally to effectuate this desire is by private mutual covenants between property owners imposing appropriate servitudes on the land. We must not “employ the new device of zoning to make exclusive districts much more exclusive.” Bassett on Zoning, page 72. We do not believe it is a proper function of government to interfere in the name of the public to exclude churches from residential districts for the purpose of securing to adjacent landowners the benefits of exclusive residential restrictions.
 

 We conclude that respondents’ refusal to grant the permit to erect the church in the residential district so long as land was available in the business district was not authorized by the ordinance from which respondents derived their powers. And we further conclude that the administrative act of respondents in refusing a permit to erect a church in the residential district, there being no adequate showing that this exclusion of
 
 *250
 
 the church was in furtherance of the public health, safety, morals or the public welfare, was arbitrary and unreasonable and in violation of relator’s rights under the state and federal Constitutions.
 

 In addition to the. general policy of excluding all churches from the class I district while property in class III is still available, respondents have raised certain specific objections to the particular church which relator plans to build, as reasons for refusing the special permit: (1) That it appeared, particularly from newspaper articles quoting an interview with the president of relator’s organization, that there were plans for building not only a church on the site, but also a separate educational unit, perhaps to contain a gymnasium; (2) that the plans and specifications submitted to the church “show the church located over a public easement reserved for the use of village and public utilities”; and (3) that the “plans and specifications, in other respects, did not comply with the building regulations and ordinances of said village.”
 

 For the reasons stated by the Court of Appeals in its
 
 per curiam
 
 opinion, we believe that none of these specific objections is well founded or affords sufficient ground for withholding the permit. It appears from the record that the plan to build a separate educational unit had been abandoned before relator purchased the property, and the final plans submitted for approval show but one building. Moreover, if the plans for a church alone, which is all that has thus far been before the respondents, were otherwise acceptable, a permit could not be refused merely because relator might possibly later want to build some undesirable additional building. If this additional structure violated the zoning scheme, respondents would have ample opportunity to prevent its erection then by refusing a permit.
 

 As for interference with easements, relator has satisfactorily established that it has arranged with the various utilities whose rights are involved either for
 
 *251
 
 them to release their rights, or for relator to grant them a satisfactory easement elsewhere with which the-building will not interfere, and which will not affect anyone’s property but relator’s. As a final demonstration of its intention to forestall any legal objections arising out of possible interference with public-easements, relator, at the earliest possible opportunity, stated in its reply that “if it should appear that there is a public easement which cannot be legally terminated without prejudice to the public, which relator' expressly denies, then relator agrees to so locate its church building upon said lots, so as not to violate and prejudice any rights the public and other lot owners in the subdivision may possess.” In accordance with this agreement, relator has submitted an alternative plot plan relocating the church on the site in such a way as not to interfere with any easements.
 

 No
 
 evidence was offered to support the allegation that the proposed building did not comply with the village building code in other unspecified respects. In fact, the president of the village commission testified, in response to a question whether the refusal of a special permit to build this particular church had been based upon any objection to any of the structural requirements of the plan, “I think not. I don’t believe there was any particular consideration given to the structural requirements of the building as of that time other than examination by the village engineer, because it was denied on other grounds.” The record convincingly indicates that these “other grounds” were the general ones relating to the erection of
 
 any
 
 church in a residential district while business property was still available.
 

 Our conclusion is that respondents’ refusal to issue a permit was not based on any valid objection to the particular church structure contemplated by the relator. It was rather in pursuance of a general policy that no churches should be admitted to the residential
 
 *252
 
 district while sites in the business district were still available, and this we hold to be in violation of relator’s property rights protected- by Sections 1 and 19, Article I of the Ohio Constitution, and the due process clause of the Fourteenth Amendment to the federal Constitution. Our decision being based on the protection of relator’s property rights, it becomes unnecessary to consider the claimed invasion of its rights of freedom of worship.
 

 The judgment of the Court of Appeals ordering the issuance of a peremptory writ of mandamus to the respondents commanding them to grant a special permit to relator for the erection of its church is affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Williams, Matthias, Hart and Zimmerman, JJ., concur.