BOARD OF ZONING APPEALS OF DECATUR $v$. DECATUR, INDIANA COMPANY OF JEHOVAH'S WITNESSES.

[No. 29,119. Filed February 1, 1954.]

*Robert S. Anderson, Charles K. Whitted and Volge-wede, Anderson & Whitted,* all of Decatur, for appellant.

*Hayden C. Covington,* of Brooklyn, New York, and *Custer & Smith,* of Decatur, for appellee.

BOBBITT, J.—Appellee filed its application with the proper officer of the city of Decatur, Indiana, seeking a permit under the provisions of the city zoning ordinance for the construction of a church with a seating capacity of 150 on a vacant lot owned by appellee at the northeast corner of Ninth and Monroe Streets in said city. The lot is 66 feet x 108 feet, and the size of the proposed building is 34 feet x 60 feet.

The building permit was denied because of non-compliance with the building setback line and the failure to provide off-street parking space as required by the ordinance. An appeal from this ruling was taken to the Board of Zoning Appeals requesting a variance of the terms of the ordinance and asking the ". . . same privilege to use N. Ninth Street for parking as enjoyed by other church organizations on various city streets."

The Board of Zoning Appeals denied the request for variance and appellee then filed a petition for writ of certiorari in the Adams Circuit Court. The cause was there submitted on the verified petition of appellee and the verified return of appellant. From a judgment reversing the action of the Zoning Board this appeal is prosecuted.

The applicable parts of the zoning ordinance of the City of Decatur are as follows:

"Article IV.

· · · ·

"Sec. 5. Yard Specifications:

"a. Buildings shall be set back from front, rear and side lines of all lots in order to establish open areas designed as Front, Rear and Side Yards. The minimum set back for such purposes shall be as follows:

"b. Front Yard:

"(1) Normally, twenty percent (20%) of the depth of the lot-maximum required forty (40) feet.

"(2) In a block where twenty-five percent (25%) of the lots are occupied by buildings, the average depth of front yards establishes the front yard for the block.

· · · ·

"Sec. 7. Off-street Parking of Motor Vehicles.

"a. Specifications relating to off-street parking of motor vehicles are contained in Article XIII of this Ordinance.

· · · ·

"Article XIII.

"Off-street Parking for Motor Vehicles.

"Sec. 1.   Parking Requirements.

"In order to lessen or avoid congestion in the streets and to secure safety and promote general welfare, the following regulations are hereby established to require that each building hereafter erected, reconstructed or structurally altered, which is arranged, intended or designed to be used for any of the following uses, shall provide off-street parking space, of not less than two hundred fifty (250) square feet for each space, within the building, on the premises surrounding the building, or on other premises when specified as follows:

. . . .

"c.   Theaters; Sports Arenas; Churches; Temples; Mortuaries; Other places of Congregation: One (1) vehicle parking space for each six (6) seats."

Section 1 of Article IV of the ordinance permits the building of churches in a residential district.

The application for the building permit was rejected for the following reasons:

1.   The average depth of the front yards in the block along Monroe Street, on which street the proposed church faces, is 18.48 feet from the property line. The proposed building as shown by the plan submitted is only 14 feet from the property line.

2.   A building of 150 seating capacity requires 6,250 square feet of off-street parking, whereas only 2,244 square feet are provided in the application.

Zoning ordinances and regulations find their justification in the police power of the state. *Landay* v. *MacWilliams* (1938), 173 Md. 460, 196 A. 293, 114 A. L. R. 984; Yokley, Zoning Law & Practice, 2d ed. Vol. 1, §15, p. 17.

We are here faced with the problem of balancing interests asserted under the police power with those under the Constitutional guarantee of freedom of worship and assembly.

Appellee contends that the restrictions imposed by Section 5 of Article IV pertaining to property setback lines, and Section 7 of Article IV, and Section 1(c) of Article XIII pertaining to off-street parking are unreasonable, arbitrary, capricious and unlawful as applied to its particular property described in its application for a building permit because when so applied they violate the First and Fourteenth Amendments to the Constitution of the United States.

Appellant asserts that the application of said sections to appellee's property is a reasonable and valid exercise of the police power; that it was within the discretion of the zoning board to grant, or not to grant, the variance; and that there is no showing of illegality in the proceedings.

The illegality alleged in the petition for certiorari is that the zoning board, in the enforcement of certain restrictions contained in the ordinance against appellee's property under the surrounding facts, violated certain provisions of the federal constitution.

Unconstitutionality is illegality of the highest order. See: *Board of Zoning Appeals* v. *Moyer* (1940), 108 Ind. App. 198, 210, 27 N. E. 2d 905; 11 Am. Jur., Constitutional Law, §148, p. 827.

Appellee has properly presented the question of the unconstitutionality of certain provisions (parts) of the ordinance as applied to its particular property. *City of East Chicago, Ind.* v. *Sinclair Refining Co.* (1953), 232 Ind. 295, 111 N. E. 2d 459.

Each zoning case must stand upon its own set of facts; *City of East Chicago, Ind.* v. *Sinclair Refining*

*Co. supra;* Yokley, Zoning Law & Practice, 2d ed. Vol. 1, §28, p. 40; and a zoning ordinance may be valid generally but invalid as applied to certain property; *Women's Kansas City St. Andrew Soc.* v. *Kansas City, Mo.* (1932), 8 Cir., 58 F. 2d 593; *People ex rel. Joseph Lumber Co.* v. *City of Chicago* (1949), 402 Ill. 321, 83 N. E. 2d 592; *Fairmont Inv. Co.* v. *Woermann* (1948), 357 Mo. 625, 210 S. W. 2d 26; McQuillin on Municipal Corporations (3d ed.) Vol. 8, §25.63, p. 112, and cases there cited.

The sole question thus presented is: Are the restrictions imposed by the above-mentioned sections of the Decatur Zoning Ordinance reasonable regulations on the building of a church at the location and under the facts and circumstances as shown by the record before us?

*First:* We shall consider the restriction found in Section 5 of Article IV pertaining to front yards or property setback lines.

Zoning restrictions cannot be imposed unless they bear a substantial relation to the public health, safety, morals, or general welfare. *Nectow* v. *Cambridge* (1928), 277 U. S. 183, 48 S. Ct. 447, 72 L. Ed. 842.

Freedom of worship is a fundamental right protected by the Fourteenth Amendment of the United States Constitution from invasion by state action. *Chaplinsky* v. *New Hampshire* (1942), 315 U. S. 568, 62 S. Ct. 766, 86 L. Ed. 1031; *Illinois ex rel. McCollum* v. *Board of Education* (1948), 333 U. S. 203, 68 S. Ct. 461, 92 L. Ed. 649, 2 A. L. R. 2d 1338.

However, the building of churches is subject to such reasonable regulations as may be necessary to promote the public health, safety or general welfare. *Cantwell* v. *Connecticut* (1940), 310 U. S. 296, 60 S. Ct. 900,

84 L. Ed. 1213, 128 A. L. R. 1352; *West Virginia State Board of Education* v. *Barnette* (1943), 319 U. S. 624, 63 S. Ct. 1178, 87 L. Ed. 1628, 147 A. L. R. 674; *Commonwealth of Mass.* v. *Prince* (1943), 313 Mass. 223, 46 N. E. 2d 755, 152 A. L. R. 571, 576.

It is well settled that a municipality may, as a part of a comprehensive zoning plan, establish reasonable setback or front yard lines, the only restriction being that such provisions shall be reasonable. Yokley, Zoning Law & Practice (2d ed.), Vol. 1, §164, p. 406; McQuillin on Municipal Corporations (3d ed.), Vol. 8, §25.138, p. 237; 11 Am. Jur., Constitutional Law, §302, p. 1073.

There is no certain test of what is a reasonable interference with the enjoyment of the rights of property or the personal rights guaranteed by the Constitution. 11 Am. Jur., Constitutional Law, §304, p. 1079. No general definition of reasonableness is possible, but its determination must rest upon human judgment applied to the facts and circumstances of each particular case. Yokley, Zoning Law & Practice, (2d ed.), Vol. 1, §28, p. 40, *supra;* 11 Am. Jur., Constitutional Law, §304, p. 1079, *supra.*

The validity of the restrictions here in question must rest upon the theory that they are necessary for the safety, health or general welfare of the public. We find no evidence in the record tending to show that the setback line of 18.48 feet is arbitrary or capricious as applied to appellant's property, or that it places an unreasonable restriction upon the freedom of worship or the right of assembly. The enforcement of this restriction will not act as a prohibition against the building of the proposed church because appellee can reasonably comply with the requirement. In our judgment, Article IV, §5(b) 2 of the Zoning Ordinance of

the city of Decatur is not an unreasonable regulation as applied to appellee's property and is, therefore, a valid exercise of the police power in the interest of health and public welfare.

*Second:* We now consider the provision of said ordinance pertaining to off-street parking, which presents a question of first impression in this state.

Under the provisions of the ordinance appellee is required to provide 6,250 square feet of off-street parking for the accommodation of 25 automobiles, or one parking space for each six seats in the church.

The evidence before the zoning board discloses that appellee offered to reduce the seating capacity of the proposed church from 150 to 100; that services were held from 7:30 or 8 o'clock to ten o'clock p. m. on Fridays, and at 3:45 p. m. on Sundays; that there is no shift change of factory workers at either of these hours, and traffic which is heavy on Ninth Street at the time of change in shifts of factory workers is at its ebb and "very low" at the hours when it is proposed to hold services. The average attendance at services, at the time of hearing before the zoning board, was 40, and the expected attendance in the new church is 45. Appellee asserted at the hearing that the available parking space would be ample to accommodate the actual members who would attend services. The evidence further discloses that three other churches in the immediate vicinity, which were built before the present zoning ordinance was enacted, use both Monroe and Ninth Streets for parking.

The record is silent regarding any effort of appellee to secure the use of parking space other than on the lot occupied by the church as provided by §3(b) and (d) of Article XIII.[1] Nor does the record show whether

1. Sec. 3(b). Space for off-street vehicle parking may be provided on the lot occupied by the building which it serves,

or not any such space was available to appellee. Further, the record discloses no effort on the part of the zoning board to ascertain whether other parking space was available to appellee, nor did appellee present any evidence to show that no such facilities were available.

The law is well settled that the building of a church may not be prohibited in a residential district. *State ex rel. Roman Catholic Bishop of Reno* v. *Hill* ■ (1939), 59 Nev. 231, 90 P. 2d 217; *State ex rel. Synod of Ohio* v. *Joseph* (1942), 139 Ohio St. 229, 39 N. E. 2d 515, 138 A. L. R. 1274; *Ellsworth* v. *Gercke* (1945), 62 Ariz. 198, 156 P. 2d 242; *North Shore Unitarian Soc.* v. *Village of Plandome* (1951), 109 N. Y. S. 2d 803, 200 Misc. 524; Yokley, Zoning Law & Practice (2d ed.), Vol. 2, §222, p. 110; 58 Am. Jur., Zoning, §125, p. 1010.

If the refusal of the zoning board to grant a variance results in the exclusion of a church from a residential district, such action is illegal and must be reversed.[2] If the regulation requiring off-street parking for churches in proportion to the number of seats in the church is to be sustained, it must be upon the ground that the benefit to the public health, morals, general welfare and safety outweighs the restriction which such regulation places upon the right of freedom of worship and assembly.

Appellants do not contend that the small church here proposed will in any way adversely affect either

or upon approval by the Board of Zoning Appeals, on adjacent areas within three hundred (300) feet of such building provided the property is zoned to permit such use.

(d) A church or other place of congregation, which requires parking facilities at times when other nearby uses would not require their established parking facilities, may enter into a joint agreement for the use of such facilities and, if such agreement is approved by the Board of Zoning Appeals, said Board may relieve the Church or other place of congregation from establishing its own off-street vehicle parking facilities.

2. See Acts 1947, ch. 174, §87, p. 571, being §53-788, Burns' 1951 Replacement.

the public health or morals, or that this restriction upon the building of churches is predicated upon a proposition designed to protect public health or morals. Such regulations are to be found in zoning ordinances of other cities and they are predicated upon the theory that because of the constantly increasing traffic congestion in urban centers traffic hazards are multiplied by the parking of cars along the street and such a regulation is necessary and essential to the welfare and safety of the public.

It is no doubt true that automobile traffic often chokes the streets and endangers both the general and the traveling public. However, it is rarely, if ever, that people entering or leaving a church cause or contribute to traffic accidents.[3] It would seem reasonable to assume that if regulation is necessary in the interest of the safety, convenience and welfare of the general public, that should be regulated which has a direct effect upon such general welfare. This can be, and is, done generally by traffic police, signs and other reasonable regulations imposed alike upon all persons using the streets in the vicinity of churches, without undue interference with the right of worship and free assembly.

When, under the facts in this case, the welfare and safety of the people in the neighborhood is placed in the scales of justice on one side, and the right to freedom of worship and assembly is placed on the other, the balance weighs heavily on the side guaranteeing the right to peaceful assembly and to worship God according to the dictates of conscience, regardless of faith or creed.

Appellee proposes to limit its seating capacity to 100, and states that the expected average attendance is 45 people. It appears from the record that the proposed

3.   See also: State v. City of Tampa, Fla. (1950), 48 So. 2d 78.

church site is bounded by streets on two sides. There is no evidence that such streets are not of the same width as other streets in the city of Decatur. Even conforming to the established setback line there are approximately 2,000 square feet of off-street parking provided. Five other churches within a radius of five blocks, although built prior to the enactment of the zoning ordinance, use the streets for parking. Those in the same block as the proposed location use both Monroe and Ninth Streets for parking.

The Supreme Court of Florida in *State* v. *City of Tampa, Fla.* (1950), 48 So. 2d 78, held a similar provision of the zoning ordinance of the city of Tampa invalid and, at page 79 of 48 So. 2d, said:

"The contention that people congregating for religious purposes cause such congestion as to create a traffic hazard has very little in substance to support it. Religious services are normally for brief periods two or three days in the week and this at hours when traffic is lightest—early in the morning, early in the evening and at 10:00 and 11:00 on Sundays. Many churches are like this one, in residential areas, where traffic is not heavy and where there are side streets and other facilities for parking. The church involved here is a small church which is shown to have ample off-street parking space for all ordinary purposes. It would rarely if ever require parking space on the street in front of the church. Even if rare occasions should require parking a few cars on the streets we cannot say that a traffic hazard would be created. This is certainly a case in which the balance of convenience rule as to range in judgment might be applied."

We believe the factual situation now before us squares with that before the Supreme Court of Florida in *State* v. *City of Tampa, Fla., supra.* The services of appellee are held on Friday evenings and Sunday afternoons at times when traffic is at its lowest ebb. It has off-street

parking facilities which it claims will be sufficient for all ordinary services, and if some of the congregation are forced to use part of Ninth Street or Monroe Street for parking we cannot see how a traffic hazard would be created sufficient to tip the scales of justice in favor of the police power in the interest of public welfare and safety, as against the fundamental right of freedom of worship and peaceful assembly.

Under the set of facts in this particular case the application of this provision of the ordinance to appellee's property would not only prohibit the building of the proposed church, but would also restrict the right of freedom of worship and assembly to an extent that outweighs any benefit to the safety, health and general welfare of the public, and in such a situation the police power must yield to the constitutional right of freedom of worship and assembly. *State* v. *City of Tampa, Fla.* (1950), 48 So. 2d 78, *supra; State ex rel. Synod of Ohio* v. *Joseph* (1942), 139 Ohio St. 229, 39 N. E. 2d 515, 138 A. L. R. 1274, *supra; City of Sherman* v. *Simms* (1944), 143 Tex. 115, 183 S. W. 2d 415; *State ex rel. Roman Catholic Bishop of Reno* v. *Hill* (1939), 59 Nev. 231, 90 P. 2d 217, *supra; State ex rel. Howell* v. *Meador, Mayor* (1930), 109 W. Va. 368, 154 S. E. 876.

In our judgment Section 1(c) of Article XIII of the zoning ordinance of the city of Decatur as it has been applied to appellee's property in the factual situation before us contravenes the First and Fourteenth Amendments to the Constitution of the United States as they pertain to freedom of worship and assembly, and are unconstitutional in their application to appellee's particular property.

It appearing to the court that no good purpose could be served by the granting of a new trial, the judgment is reversed and the cause remanded with instructions

to the trial court to restate the findings and modify the judgment to conform to this opinion.

Judgment reversed with instructions.

Draper, C. J. and Gilkison, J., concur.

Emmert, J., dissents with opinion in which Flanagan, J., concurs.

## DISSENTING OPINION

EMMERT, J.—Decatur, a city of the Fifth Class, is the county seat of Adams County and has a population of 7,271 according to the 1950 census. State highways 224, 33 and 27 lead into and through the city, and each is a high type of paved roadway. The application for the building permit discloses that the proposed church building was to be located on the northeast corner of the intersection of Monroe and Ninth Streets. State highways 224 and 33 are routed over Monroe Street on the south side of the lot in controversy, and on Sunday afternoon the traffic is particularly heavy on Monroe Street, and of such density that one of the near neighbors often has to wait from five to ten minutes in order to back his car from his lot onto Monroe Street. At the time of the hearing before the Board of Zoning Appeals, parking was permitted on both sides of Ninth Street. There was a Lutheran Church two blocks west on Monroe Street, a Methodist Church four blocks east on Monroe Street, and a United Brethren Church one block south on Ninth Street, all of these churches being located there prior to the adoption of the zoning ordinance. Parking is only permitted on one side of Monroe Street, which is the route of the two state highways, but automobiles are parked on both sides of this street.

The lot owned by the appellee was rectangular in shape and extended 66 feet on Monroe Street and 108 feet on Ninth Street. The application for the permit discloses the building was to be set back 14 feet from the

line of Monroe Street and was to be rectangular in shape, 34 feet wide facing Monroe Street and 60 feet long parallel to Ninth Street. The building was to have a seating capacity of 150 persons. The zoning ordinance required the building to be set back 18.48 feet from Monroe Street, and the failure to do so was one of the two reasons for the rejection of the building permit.

The other reason for the rejection of the building permit was the ordinance required 6,250 square feet of off-street parking space, whereas the application only disclosed 2,244 square feet for off-street parking. The ordinance required theaters, sports arenas, churches, temples, mortuaries, and other places of congregation to have one vehicle parking space of 250 square feet for each six seats of seating capacity, which would require the appellee to have a parking space for 25 automobiles.

At the time the appeal was argued before us, counsel for appellee stated that he was not contending that the facts of this case were within the rule announced in *Yick Wo* v. *Hopkins* (1886), 118 U. S. 356, 6 S. Ct. 1064, 30 L. Ed. 220, but it was appellee's position that the ordinance as applied to the appellee was unconstitutional. The Board of Zoning Appeals very carefully excluded the religious beliefs of appellee from its consideration.

Zoning ordinances and regulations have been sustained as a reasonable exercise of the police power in the interest of public health, safety, morals, and the general welfare. *General Outdoor Advertising Co.* v. *City of Indianapolis* (1930), 202 Ind. 85, 97, 172 N. E. 309; 1 Yokley, Zoning Law & Practice (2d ed.) §20.

Our city streets are too often choked with automobiles and automobile traffic, which endanger the general public as well as the traveling public, because cities were planned for horse and buggy transportation. What

might have been an unreasonable exercise of the police powers in the days of the Model T may be clearly valid now under the growing menace of the automobile, which in the Nation has been taking an annual toll of more than 30,000 killed and over a million injured.[1]

No better statement of the reason for zoning regulations has been made than that by Mr. Justice Sutherland in *Euclid* v. *Ambler Co.* (1926), 272 U. S. 365, 386, 387, 47 S. Ct. 114, 71 L. Ed. 303, 54 A. L. R. 1016:[2]

"Building zone laws are of modern origin. They began in this country about twenty-five years ago. Until recent years, urban life was comparatively simple; but with the great increase and concentration of population, problems have developed, and constantly are developing, which require, and will continue to require, additional restrictions in respect of the use and occupation of private lands in urban communities. Regulations, the wisdom, necessity and validity of which, as applied to existing conditions, are so apparent that they are now uniformly sustained, a century ago, or even half a century ago, probably would have been rejected as ar-

---

1. 38,000 persons were killed in motor vehicle traffic in the United States in 1952. In the same period 1,350,000 were injured. Accident Facts published by the National Safety Council, 1953 Ed., p. 43.

During the same period in Indiana 1,277 persons were killed. Indiana Traffic Fatalities, 1952 Accident Records Bureau of the Indiana State Police, p. 1. 33,382 persons were injured in Indiana during the same period.

The registration of motor vehicles for Indiana discloses the increasing traffic problem:

| Year | Passenger Cars | All Types |
|---|---|---|
| 1946 | 897,465 | 1,222,552 |
| 1947 | 952,595 | 1,323,777 |
| 1948 | 1,059,447 | 1,474,582 |
| 1949 | 1,090,255 | 1,302,398 |
| 1950 | 1,488,517 | 1,907,822 |
| 1951 | 1,658,326 | 2,080,181 |
| 1952 | 1,681,573 | 2,105,577 |

From Yearly Registrations—Bureau of Motor Vehicles.

2. The Village of Euclid had a population of from 5,000 to 10,000 and an area of from 12 to 14 square miles. The zoning ordinance substantially reduced the value of a considerable part of appellee's lands.

bitrary and oppressive. Such regulations are sustained, under the complex conditions of our day, for reasons analogous to those which justify traffic regulations, which before the advent of automobiles and rapid transit street railways, would have been condemned as fatally arbitrary and unreasonable. And ·in this there is no inconsistency, for while the meaning of constitutional guaranties never varies, the scope of their application must expand or contract to meet the new and different conditions which are constantly coming within the field of their operation. In a changing world, it is impossible that it should be otherwise. But although a degree of elasticity is thus imparted, not to the *meaning,* but to the *application* of constitutional principles, statutes and ordinances, which after giving due weight to the ·new conditions, are found clearly not to conform to the Constitution, of course, must fall."

The concepts of religious freedom, freedom of speech and the press, which are embodied in the Fourteenth Amendment, have never been construed as absolute rights, and beyond the power of reasonable regulation under the police power. Religious freedom does not include the right to practice polygamy. *Reynolds* v. *United States* (1878), 98 U. S. 145, 25 L. Ed. 244; *Davis* v. *Beason* (1890), 133 U. S. 333, 10 S. Ct. 299, 33 L. Ed. 637; *Mormon Church* v. *United States* (1890), 136 U. S. 1, 10 S. Ct. 792, 34 L. Ed. 478. Nor does it grant a right to a parent to have her child violate the child labor laws of a state. *Prince* v. *Mass.* (1944), 321 U. S. 158, 64 S. Ct. 438, 88 L. Ed. 645.[3]

It could scarcely be contended that religious freedom would prevent the City of Decatur from requiring the

3. Freedom of the press does not grant an immunity against conspiracies in restraint of trade. *Associated Press* v. *U. S.* (1945), 326 U. S. 1, 65 S. Ct. 1416, 89 L. Ed. 2013. See also *Natl. Broadcasting Co.* v. *U. S.* (1943), 319 U. S. 190, 63 S. Ct. 997, 87 L. Ed. 1344; *Mabee* v. *White Plains Pub. Co.* (1946), 327 U. S. 178, 66 S. Ct. 511, 90 L. Ed. 607.

church doors to swing to the outside. Even if the religious doctrine of a church condemned a fire resistant roof, the city, in the exercise of the police powers for the safety of the members as well as the public and other property, could properly require the roof to be constructed of fire-resistant material.[4] Many other examples could be stated.

It is quite evident that the members of the appellee could be killed just as dead going to and from church as going to and from a theater or a basketball game. It is a proper exercise of the police power to protect appellee's members from their own negligence as well as from the negligence of the traveling public. There would be just as much logic in holding that the members of appellee when going to church were not required to comply with the traffic regulations as in holding that the appellee is not required to make reasonable provisions for a lessening of the traffic hazards by off-street parking.

If it was a proper exercise of the police power for the city by its zoning ordinance to require the appellee to comply with the average setback line of the residences, which only has a very remote bearing on traffic hazards, *a fortiori* it was a reasonable exercise of the police power to require appellee to provide space for 25 cars to park off the streets. The right of appellee to exercise its religious freedom is not violated in either case.

4. Church controversy as to the kind of a church roof is not unknown. In the early 1800's the church at Bryan Station, Kentucky, sustained a schism on matters of doctrine, the members splitting into two groups, but both groups continued to worship at different times in the same building. When it needed a new roof one group did not want a metal roof while the other group did. The matter was satisfactorily compromised by covering one-half of the roof with shingles, and one-half with metal. Virginia Webb Howard, Bryan Station Heroes & Heroines (1922), pp. 49, 50.

The City of Porterville, California, is not as large as Decatur.[5] In *Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints* v. *City of Porterville* (1949), 90 C. A. 2d 656, 203 P. 2d 823, the Fourth District Court of Appeals of California decided that the City of Porterville did not violate the religious freedom of the appellant by excluding it from an area of the city which was zoned solely for the erection of single family dwellings. The court said: "It is a matter of common knowledge that people in considerable numbers assemble in churches and that parking and traffic problems exist where crowds gather. This would be true particularly in areas limited to single family dwellings. There necessarily is an appreciable amount of noise connected with the conduct of church and 'youth activities.' These and many other factors may well enter into the determination of the legislative body in drawing the lines between districts, a determination primarily the province of the city." (Page 659)   The Supreme Court of the United States dismissed the appeal from the California court for want of a substantial federal question. 338 U. S. 805.   Later the same court, speaking by Chief Justice Vinson, said: "When the effect of a statute or ordinance upon the exercise of First Amendment freedoms is relatively small and the public interest to be protected is substantial, it is obvious that a rigid test requiring a showing of imminent danger to the security of the Nation is an absurdity. We recently dismissed for want of substantiality an appeal in which a church group contended that its First Amendment rights were violated by a municipal zoning ordinance preventing the building of churches in certain residential areas. *Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints* v. *Porterville*, 338 U. S. 805 (1949). *American Communi-*

---

5.   City of Porterville 1940 census 6,270; 1950 census 6,904.

*cations Assn.* v. *Douds* (1950), 339 U. S. 382, 397, 398, 70 S. Ct. 674, 94 L. Ed. 925.

If it is not a denial of due process or equal protection of the law to exclude a church entirely from an area zoned for single family residences, it is not a denial of due process or equal protection of the law to require a church to provide a reasonable amount of off-street parking space. Nor has the appellee been deprived of any constitutional right granted by the Indiana Constitution.

The judgment should be reversed.

Flanagan, J., concurs.

NOTE.—Reported in 117 N. E. 2d 115.