Be:ul, J.
The facts in this case are not complicated and the legal question involved may be easily stated: Does the zoning regulation adopted by the Board of Township Trustees of Lexington Township comply with the legislative authority found in Section 3180-26, General Code (Section 519.02, Revised Code) ? At the time of the adoption of the zoning regulation by the township trustees the enabling statute, Section 3180-26, General Code, effective September 25, 1947, read as follows:
“For the purpose of promoting public health, safety, morals, comfort or general welfare; to conserve and protect property and property values; to secure the most appropriate use of land; or to facilitate adequate but economical provision of public improvements, all in accordance with a comprehensive plan, the board of trustees of any township is hereby empowered to regulate by resolution the location, height, bulk, number of stories and size of buildings and other structures, including tents, cabins and trailer coaches, percentages of lot areas which may be occupied, set back building lines, sizes of yards, courts and other open spaces, the density of population, the uses of buildings and other structures including tents, cabins and trailer coaches and the uses of land for trade, industry, residence, recreation or other purposes in the unincorporated territory of such township and for said purposes may divide all or any part of the unincorporated territory of the township into districts or zones of *344 such number, shape and area as said township trustees may determine. All such regulations shall be uniform for each class or kind of building or other structure or use throughout any district or zone but the regulations in one district or zone may differ from 11 those in other districts or zones.” (Emphasis added.)
The zoning regulation in question, so far as pertinent hereto, reads as follows:
“Lexington Township shall be divided into 36 sections. Zone numbers shall correspond to section numbers on the official map. Incorporated areas in the city of Alliance and the village of Limaville, shall not be included in the zoning regulations of Lexington Township.
c c * *= # '
“Section 35. Zoning shall include all unincorporated area of this section. Farming, residential, commercial, recreational. ’ ’
The zoning regulation then sets forth four resolutions apparently adopted by the board of trustees.
Resolution I sets forth, as follows, the purposes sought to be accomplished by zoning:
“First — To work for raising the sanitary standards and improve housing to meet fair minimum requirements as are necessary to health, safety, and welfare of our township in an effort to increase the valuation of our properties and reduce our fire insurance rates which are unnecessarily high.
“Second — To accomplish this with the full co-operation of each and every citizen of this township.
“Final results being a better place to live, better homes, better health and a township that we can be proud of.”
Resolution II provides for the submission to and filing with the township zoning commission and the township trustees plans for any structure involving *345 housing, commerce, manufacturing, storage, trailers, etc., or any construction to be used as a permanent structure. The resolution then provides for the issuance of permits “with the approval of the Lexington Township Zoning Commission and the Lexington township trustees.”
Resolutions III and IV relate to the wrecking and dismantling of motor vehicles and the dumping and burning of rubbish, neither of which are involved herein.
It is obvious from this zoning regulation that the only portion thereof concerning section 35, which covers one square mile of area, is that it shall be used for farming, residential, commercial and recreational purposes. No designation is made in the regulation as to what portions of section 35 shall be used for each or any of those uses, and the record fails to reveal any map of the section designating such areas of use.
It is difficult to see how anyone interested in purchasing property in section 35 for a particular use could determine in advance to what use that property could be put. And, in the absence of any designation in the plan of the uses to which a particular area could be put, it is equally difficult for this court to see how there could be any uniform administration of the regulation within the section as required by Section 3180-26, General Code, Although we make no imputation of such action in this instance, a zoning regulation such as that involved herein could easily leave the administration thereof solely within the unwarranted whim or caprice of the officials charged with its enforcement.
All zoning laws and regulations find their justification in the police power and it is well settled that the power to enact zoning regulations can not be exercised in an arbitrary or unreasonable manner. City of Youngstown v. Kahn Bros. Building Co., 112 Ohio St., *346 654, 148 N. E., 842, 43 A. L. R., 662, and State, ex rel. Synod of Ohio, v. Joseph et al., Village Comm., 139 Ohio St., 229, 39 N. E. (2d), 515, 138 A. L. R., 1274.
The absence of any comprehensive plan in the regulation involved herein certainly opens the door to an arbitrary and unreasonable administration of the regulation.
The reasons given by the appellee for denying the requested permits are based on the cost of other homes in the area and on the fact that the lots on which the houses are proposed to be built are too small, that the houses would be prefabricated dwellings and that they would tend to decrease or depress property values in the immediate surrounding areas. Yet the regulation which purports to zone this area makes no provision for lot sizes, setback building lines, sizes of "yards, courts and other open spaces or any other of the items permitted to be regulated by Section 3180-26, General Code.
There being no yardstick in the regulation by which the zoning commission could possibly be guided, we can come to no conclusion other than that the commission in this instance acted arbitrarily and unreasonably in refusing to issue the permits.
A motion was made herein by appellee to strike from the record submitted herein exhibits numbered one through four, for the reason that the courts below had not considered these exhibits because they had not been properly admitted into evidence. The record, however, reveals that on August 13, 1953, there was filed in the Common Pleas Court of Stark County a transcript of board records containing the exhibits now sought to be stricken. The transcript of docket and journal entries and the journal entry of the Court of Appeals both reveal that these exhibits were considered by that court. Appellee’s motion is, therefore, overruled.
*347 For the reasons above stated, the judgment of the Court of Appeals is reversed, and final judgment is rendered for the appellant.

Judgment reversed.

Weygandt, C. J., Matthias, Zimmerman, Stewart and Taet, JJ., concur.
Hart, J., not participating.