## Conrad Christ v. E. T. Fent.

(Filed January 4, 1906.)

1. **VALIDITY OF OFFICIAL ACTS—Presumed, When.** The law presumes the validity and regularity of the official acts of public officers within the line of their official duties, and this presumption obtains until overcome by proof as to such acts, except in cases where it is sought to take away personal rights of a citizen, or deprive him of his property, or place a charge or lien thereon.
2. **APPEALS FROM SURVEYS OF THE COUNTY SURVEYOR.** The onus lies on the party appealing from a survey regularly made by a county surveyor to show that the survey is incorrect.

(Syllabus by the Court.)

*Error from the District Court of Lincoln County; before John H. Burford, Trial Judge.*

*L. O. Lytle,* and *F. H. McGuire,* for plaintiff in error.

*Hoffman & Embry,* for defendant in error.

### STATEMENT OF FACTS.

This was an action tried in the district court of Lincoln county at the April term, 1904, before the Hon. John H. Burford, presiding judge. The facts disclosed by the record are as follows: That one T. J. Greenwell was the duly authorized and acting county surveyor of said Lincoln county; that Conrad Christ is the owner and was in the possession of the s. w. quarter of section eighteen, township fifteen, north; range two, east of the Indian meridian; Lincoln county, Oklahoma Territory; that E. T. Fent is the owner and was in possession of the southeast quarter of the above mentioned section, township, and range, in said Lincoln county. That

upon the application of E. T. Fent owner as aforesaid, T. J. Greenwell as such county surveyor made survey number 227, fixing and locating the boundary lines between said lands. That said survey was returned, and duly recorded in the records of said county. That Conrad Christ took an appeal therefrom, pursuant to the statute, to the district court, that a trial was had on said appeal, and judgment rendered sustaining said survey, to all of which plaintiff in error excepted, assigning as error that the judgment of the court so rendered is not sustained by the evidence, and is contrary to law. The record further shows that motion for new trial was made in proper time, overruled, and exceptions taken, and the case is brought here for review.

Opinion of the court by

IRWIN, J.: The first assignment of error is that the survey was not made in accordance with the statute for the reason that the proper parties were not notified, or that any owners were present. The record discloses that the only owners affected by such survey were the plaintiff and the defendant; Conrad Christ, and E. T. Fent, and on pages 7 and 8 of the record it is shown that notice in writing was given to Conrad Christ that a survey would be made by the county surveyor to establish the line between his land and the land of the defendant in error, E. T. Fent. But it is complained by plaintiff in error that this notice provided that the survey should be made on the 16th day of October, and that the survey was not actually made until the 21st day of October, but the record, on the same page, discloses the admission of the plaintiff in error, Christ that he was notified verbally that the survey would be postponed until the 21st

of October; so, as a matter of fact, he had actual knowledge that the survey was to be made on the 21st day of October, the day it was actually made, and that he could, had he so desired, have been present at that time. We think this is a substantial compliance with the statute, and the plaintiff in error under the circumstances, has no right to complain that any of his substantial rights have been lost, as by this notice he had ample opportunity to be present at the time of making said survey if he had so desired.

Another reason why, in our judgment, this assignment of error cannot be made available, is that the point is not raised in his motion for new trial as found in the record on page 42, or in his petition in error, as found on page 1 of the record.

Another ground of objection to the survey is that it is not shown that the parties chosen as chainmen were disinterested parties. The record shows that these men were selected by the county surveyor, and were regularly sworn as required by statute, and the presumption of law being that the surveyor complied with the law, and did his duty, this would raise the presumption that they were disinterested parties, and had the qualifications required by statute, and this presumption will prevail in the absence of proof to the contrary.

These are the only questions raised by plaintiff that are termed by them jurisdictional. The only remaining objection is that the evidence does not sustain the judgment of the court. In the trial of this case below, the case proceeded entirely upon the theory upon the part of the plaintiff in error that the survey was incorrect, and they proceeded to trial upon that theory, and, so far as the record discloses, no

question was raised in the court below as to the jurisdiction of the county surveyor. This would seem to us to amount to a waiver of any question of notice, or the sufficiency of the qualifications of the chainmen and flagmen used in such survey. The plaintiff in error most certainly could make such a waiver, either at the time of the survey, or later, and when the trial court had acted upon such waiver, and rendered judgment on the merits, he should not be heard to raise the question now. *Caylor v. Luzadder,* 36 N. E. 909.

In support of their contention, plaintiff in error cites the case of *Havighorst v. Walkins,* 13 Okla. 128. But we think that an examination of that case and a comparison of the facts there, with the facts in the case at bar, will show that there is very little in common between the two cases. In the Havighorst case, no record of the survey was filed as required by law. Nothing was there shown by the record at whose request the survey was made, that owners were notified, neither does the survey show which corner the surveyor began his survey from, or to what his survey ran. The variations of the needle were not shown, and the survey does not pretend that it was ever chained, and does not show that any one assisted the surveyor, or that he had any chainmen, sworn or otherwise, that any measurements were made; and his field notes and plats, which under the laws should accompany the survey to make it official, were entirely wanting, and in these particulars, that case differs from the case at bar; but the rule of law laid down in that case is, that the county surveyor is a public officer, and that the laying out and establishing of a line between adjacent owners does not come within the definition of taking away personal rights of either party, or of depriving either of his property, or placing a charge or

lien thereon. It was simply an attempt, in a legal way to establish the boundary line between the two, and to establish the corners and proper boundaries of lands lying adjacent. This being true, this was the act of a public official, and within the line of his official duty, and it necessarily follows that before the presumption of validity which the law throws around his action can be overcome, the proof must be such as to in some way impeach his action, or satisfy the court that his conclusions were wrong. Therefore, we take it, that the rule is well established that the *onus* lies on the party appealing from a survey made by the county surveyor, to show that the survey is incorrect.

In the case of *Findley v. McCormich,* 50 Ind. 19,. the court said:

"The *onus* lies on the party appealing from the survey made by the county surveyor, to show that the survey is incorrect."

The sole question then to be determined here, is: Was the evidence introduced by the plaintiff in error in the district court such as, standing alone and uncontradicted, would satisfy the court of the incorrectness of the survey? It is contended that the survey was incorrect because the surveyor did not use a certain mulberry stump on the south line of section eighteen at a witness tree. On pages 20, 30, and 31. of the record, it is shown that a mulberry stump was found on the south line of section eighteen which was burned and charred, and it is further shown by the record that no marks or signs were on the stump indicating that it was a witness tree, and we think, under these circumstances, that the surveyor had a right to refuse to treat it as a witness tree,

and to locate the corner by other and competent rules, known recognized, and used by surveyors.

Another objection is that a certain stream referred to in the brief of plaintiff in error was not used as a monument, and measurements were not made therefrom. But the record fails to show that such stream was referred to as a monument by the governmental survey, or by the field notes, and for this reason, the surveyor, if, in his judgment such course was proper, had a right to disregard it as a monument. The surveyor could not act upon such doubtful evidence, but pursued the safer course of locating this corner, the one fourth section corner on the south line of section 18, by proportionate measurement, and this course seems to be approved by one of the authorities cited by plaintiff in error, 5th Cyc. page 974, where the following rule is laid down as the correct one:

"In the case of government sections interior lines in the extreme northern or western tiers of quarter sections containing either more or less than the regular quantity are to be twenty chains wide, and the excess or deficiency of measurements is always to be thrown on the exterior lots; elsewhere the assumed subdivisional corner will always be a point equidistant from the established corners. This rule, however, has no application when the original surveys are found to be erroneous, in which case the excess or deficiency is to be apportioned to each subdivision within the boundaries where the corners are lost."

This rule of throwing the excess or deficiency on the exterior lots on the north and west of townships is the rule followed by the government in making the original surveys. When the government once makes an official survey, all subsequent surveys must attempt to locate the corners at the

places where they were placed by the government. So the rule of throwing excess or deficiencies on exterior lots has no application when the original surveys are found to be erroneous, in which case the excess or deficiency is to be apportioned to each subdivision within the boundaries where the corners were lost.

The only other question raised by this record which we deem it necessary to discuss, is whether the action of the county surveyor in apportioning between the land owners the excess of land found by his survey over the governmental survey, was correct. By actual measurements, the county surveyor found that the south line of section eighteen was longer than that returned by the governmental survey, and the question arose, what should he do with the excess. He distributed the excess proportionately to the two pieces of land, which we think was correct. He could not conclude that the error arose in a part of the line, but was bound to conclude that it arose in, and affected the whole line. In the case of *Cayler v. Luzadder*, 36 N. E. 909, before cited, proportionate measurement is defined as a "measurement having the same ratio to that recorded in the original field notes as the length of the chain used in the new measurement has to the length of the chain used in the original survey, assuming that the original measurement was correctly made."

In the case at bar, the county surveyor divided the excess proportionately between the two distances, (the south line of the two quarter sections taken separately) as expressed in the field notes of the original survey.

This proportionate division of the excess of the length of the new line would throw the point for the quarter corner

monument at the place on the surface where it was located under the original survey. This is what the surveyor did in this case, and this is the purpose and intent of the law. It places the new monument at the same place where the government located the original one, and is held to be correct in the following cases: *Miller et al., v. Topeka Land Co.*, 24 Pac. 420; *Marts v. Williams,* 67 Illinois 306; *Jones v. Kimble* 19 Wis. 429.

A circular dated March 14, 1901, issued by the United States general land office, giving directions to local land offices in cases of restoration of lines, or obliterated corners, and subdivisions of sections, on page 8, in speaking of the restoration of lost corners by measurements, and the development of discrepancies between the new measurements, and that shown by the field notes says:

"When these differences occur, the surveyor will in all cases establish the missing corner by proportionate measurements on lines conforming to the original field notes and by the method followed in the original survey."

On page 11, of the same circular, the following language is used:

"Re-establishment of quarter section corners on closing section lines between fractional sections,—This class of corners must be re-established according to the original measurement of 40 chains from the last interior section corner.

"If the measurements do not agree with the original survey, the excess or deficiency must be divided proportionately between the two distances as expressed in the field notes of original survey. The section corner started from the corner closed upon should be connected by a right line, unless the retracement should develop the fact that the section line is either a broken or a curved line, as is sometimes the case."

But it is suggested by plaintiff in error that the original field notes, while they were used in the court below, were not made a part of this record. It seems to us that this is so much the worse for them because if all the evidence has not been presented to this court, and the burden of proof being upon the plaintiff in error to overthrow this survey, the court would be inclined to treat the omitted evidence as tending to affirm, rather than reverse, the decision of the lower court.

Now we have carefully examined the testimony as introduced in the trial court, and we are unable to see how the trial court could have arrived at any other conclusion than that the survey should be affirmed.

We fail to see where the evidence shows, by even the slightest preponderance, the incorrectness of the survey. For this reason, the judgment of the district court is affirmed, at the costs of the plaintiff in error.

Burford, C. J., who presided in the court below not sitting; Beauchamp, J., absent; all the other Justices concurring.