CONGREGATION COMMITTEE, NORTH FORT WORTH CONGREGATION, JE-HOVAH'S WITNESSES, Appellants,

v.

CITY COUNCIL OF HALTOM CITY, Texas, Appellee.

No. 15690.

Court of Civil Appeals of Texas. Fort Worth.

Feb. 24, 1956.

Oscar M. Herring, Fort Worth, and Hayden C. Covington, Brooklyn, N. Y., for appellants.

Rex L. McEntire, Fort Worth, for appellee.

RENFRO, Justice.

This appeal involves the refusal of the City Council, acting as the Zoning Board of Adjustment of Haltom City, to grant a building permit and a certificate of occupancy for a church building. Appellants are the Congregation Committee of the North Fort Worth Congregation of Jehovah's Witnesses.

Prior to June 28, 1954, one Clayton was owner of Lot No. 31 of a Revision of Block 5 of L. Berry Addition to Haltom City. On the above date, Clayton conveyed the property to appellants. Prior to the conveyance Clayton had been authorized by appellants to erect a church building on the property. Without the knowledge of appellants, Clayton, on January 9, 1954, secured from the Building Commissioner of Haltom City a permit to construct a "frame house or tile and brick" to be used as a residence. When the building was practically completed the Building Commissioner learned that it was in fact a church building and stopped work on the structure. After appellants purchased the property from Clayton they applied to the Building Commissioner for a variance zoning change in order to obtain a building permit and a certificate of occupancy. The application was denied. Appellants then appealed to the Zoning Board, thence to the City Council, acting as the Zoning Board of Adjustment for the City. Hearing was had on March 8, 1955. The relief sought by appellants was denied on the grounds that to grant the relief sought would be illegal and improper because of (1) size of the lot, (2) parking conditions, (3) inconvenience to neighbors, (4) possible depreciation in market value of surrounding property, (5) traffic safety, and (6) noise. From the above action the appellants appealed by certiorari to the District Court. The District Court entered a short form judgment, finding that appellants were not entitled to the relief sought.

On appeal appellants contend that under the undisputed evidence the refusal to issue a permit for the use of the property was arbitrary and capricious and an abuse of discretion.

The appellee, on the other hand, counters that since appellants sought a "variance", in order to establish that its action was arbitrary and capricious, the appellants must affirmatively show that appellee acted with perversity of will, passion, prejudice, partiality or moral delinquency, citing City of University Park v. Hoblitzelle, Tex.Civ. App., 150 S.W.2d 169; Webb v. Dameron, Tex.Civ.App., 219 S.W.2d 581; City of Waxahachie v. Watkins, Tex., 275 S.W.2d 477.

Appellants erroneously referred to the relief sought as a "variance" of the zoning ordinance. In reality they were dealing with an "exception". As used in zoning ordinances a "variance" is authority extended to a property owner to use his property in a manner forbidden by the zoning enactment but an "exception" allows him to put his property to a use which the enactment expressly permits. Moody v. City of University Park, Tex.Civ.App., 278 S.W.2d 912.

The zoning ordinance of Haltom City expressly permits the erection, construction, etc., of churches in the district in which appellants' church building is located. Because of the very nature of the case, that is, a church seeking a location in an area where churches are expressly permitted, the rule announced in the cases cited by appellants is not applicable. Appellee was not prejudiced by the misnomer. Its officials knew that appellants wanted to occupy the building in question, and that such right could be granted without a "variance" of the zoning ordinance.

The property is located in District R–1. The zoning ordinance, in Section 7, permits churches in District R–1:

"a. On a lot already devoted to the use for which the building permit is requested.

"b. On a lot having a side line common to a public park, playground, or cemetery, or directly across a street from any one or combination of said uses.

"c. On a corner lot having a minimum of one hundred (100) foot frontage.

"d. On a lot three sides of which adjoin streets.

"e. On a lot approved by the Board of Zoning Adjustment, subject to final approval by the City Council, following public hearing, as being a location where such building will not materially injure neighboring property for residential use."

The zoning ordinance also requires off-street parking space for motor passenger vehicles on the basis of one vehicle for each six seats of the total audience seating capacity of the building.

The evidence shows that if appellants are permitted to use the building the congregation will hold services at night on Wednesdays, Thursdays and Sundays. Quiet, orderly meetings will be conducted, devoted principally to Bible study. None of the services will be loud or boisterous. The lot on which the building is erected is 60 x 100 feet and the building is 30 x 60 feet. At the time of the hearing before the Board of Adjustment the membership was 79, with an estimated average attendance of 40 persons. About 60 seats will be used in the building. Off-street parking has been provided for 16 automobiles and head-in street parking will accommodate 9 or 10 more automobiles. The building is on a residential street with no industrial or business activity. It is not shown that traffic is any heavier on this particular street than on any ordinary residential street.

A witness for the appellants testified that the existence of the church would not lessen the value of residences in the neighborhood. A real estate dealer, called as a witness for appellee, was asked the question, "Would the erection of a church in the area in question depreciate the value of surrounding property for residential purposes?" He answered, "It would in a measure." He further testified that two other churches in the same district depreciated the value of residential property but that permits were granted said churches while he was mayor and a member of the Zoning Board of Adjustment. Another witness for appellee testified he objected to the church because it would depreciate his property but his "principal objection was that they took it out (the Clayton permit) and told them it was a residence—they took out a permit as a residence and then they turned it out as this church." Another witness for appellee testified that people came on the church grounds at night and threw whiskey bottles and beer cans on the ground.

The testimony shows that appellants did not know Clayton had deceived the Building Commissioner by representing that he desired to erect a residence and upon learning that fact they immediately applied to the proper authority for a church permit and certificate of occupancy.

Appellants have not attempted to use the building pending the outcome of this lawsuit. There is no contention that the building was not built in conformity with all ordinances in so far as building standards are concerned, or that the building or its proposed use would constitute a nuisance.

The justification for zoning rests in the police power of municipalities. In the exercise of that power arbitrary and discriminatory regulations will not be upheld but only such regulations as are reasonable and have a substantial relation to the health, safety, morals or general welfare of the community. City of Sherman v. Simms, 143 Tex. 115, 183 S.W.2d 415.

Refusal of a permit to erect a church in a residential district, there being no adequate showing that the exclusion of the church was in furtherance of public health, safety, morals or the public welfare, is arbitrary and unreasonable. State ex rel. Synod of Ohio of United Lutheran Church in America v. Joseph, 139 Ohio St. 229, 39 N.E.2d 515, 138 A.L.R. 1274.

" * * * the power to establish zones is a police power and its exercise cannot be extended beyond the accomplishment of purposes rightly within the scope of that power. To exclude churches from residential districts *does not promote the health, the safety, the morals or the general welfare of the community,* * * *." (Emphasis ours.) City of Sherman v. Simms, supra [143 Tex. 115, 183 S.W.2d 416].

Zoning ordinances cannot be imposed unless there be a substantial relation to public health, safety, morals or general welfare. The building of churches is subject to such reasonable regulation as may be necessary to promote the above aims. No general definition of reasonableness is possible but its determination must rest upon human judgment applied to the facts and circumstances of each particular case. Board of Zoning Appeals of Decatur v. Decatur, Ind. Co. of Jehovah's Witnesses, 233 Ind. 83, 117 N.E.2d 115.

Since a city cannot legally exclude a church from a residential district by a zoning ordinance, it cannot legally accomplish the same result by denying permits unless the reasons for refusing the permits are based on valid evidence showing that to permit a church would be detri-

mental to the health, the safety, the morals or the general welfare of the community.

Under the facts of this case we think none of the reasons given by the appellee for its refusal to grant the desired permits are supported by evidence showing that the existence of a church in this area would be detrimental to the public health, safety, morals and general welfare.

The application was denied, first, because of the size of the lot. Under the provisions of the zoning ordinance, the size of the lot is immaterial if the building sought to be erected will not materially injure neighboring property for residential purposes. From our understanding of the evidence no claim is made that the size of the lot materially injures the neighboring property. The objection to the church by neighboring property owners is that they do not want any church in their neighborhood. Furthermore, there is no evidence that the size of the lot has any substantial relation to the health, morals, safety or general welfare of the community. State ex rel. Westminster Presbyterian Church of Omaha, Neb. v. Edgcomb, 108 Neb. 859, 189 N.W. 617, 27 A.L.R. 437.

The second reason given by appellee for refusing the permits is lack of parking accommodations. The evidence, as previously set out, shows off-street parking facilities were provided in compliance, or, to say the least, in substantial compliance, with the zoning requirement. It was not necessary that appellants do more. State ex rel. Tampa, Florida, Company of Jehovah's Witnesses, North Unit, Inc., v. City of Tampa, Fla., 48 So.2d 78.

Neither is mere inconvenience to neighbors, given as reason No. 3, a valid reason to deny a church the right to exist in a residential district. It is hard to visualize a church being constructed in a residential district without inconveniencing someone. To restrict churches to areas where no one will be inconvenienced would be, in effect, excluding churches from resi-

dential districts. The maintenance of churches is such a valuable right that their existence will not be denied because of mere inconvenience to neighbors.

The fourth reason for refusal of the permits was "possible depreciation" in value of surrounding property. The testimony has heretofore been set out. It is in substance that any church will decrease the value of residences in a residential section. It is true that some people perfer not to live next door to a church. Accepting as true the testimony that the presence of the church will decrease the value of surrounding property "in a measure", yet this would apply with equal force to any other residential district. To deny a church the right to exist in a residential district because "possible depreciation" to surrounding property might result could conceivably keep churches out of all zoned residential districts. Thus, for a municipality to refuse to grant a permit to a church to build in a residential district because of some possible depreciation of other property, it would be doing indirectly what it cannot do directly, namely, exclude a church from a residential district. The evidence falls far short of showing material injury to neighboring residential property. See Roman Catholic Archbishop of Diocese of Oregon v. Baker, 140 Or. 600, 15 P.2d 391.

Next, appellee denied the permits because of traffic safety. The evidence does not show that traffic would be any greater at the instant church than at any other church in the area. In fact, the testimony shows it is the policy of this particular denomination to limit its membership in any one congregation to a number not exceeding 200 members. The church in question is on a quiet, residential street and meetings, if they are permitted to occupy the building in question, will be held only in the evening hours. Under the facts of this case, to deny the permits because of traffic conditions would not only prevent the use of the church but would restrict the right of freedom of worship and assembly to an extent that outweighs any benefit to the safety, health, morals and general welfare of the public. In a situation such as this, the police power must yield to the constitutional right of freedom of worship and assembly. State ex rel. Synod of Ohio of United Lutheran Church in America v. Joseph, supra; Board of Zoning Appeals of Decatur v. Decatur, Ind. Co. of Jehovah's Witnesses, supra.

Lastly, appellee assigns "noise" as a reason for denying the permits. The record does not support such finding in so far as the proposed services are concerned. The evidence is to the contrary. As far as traffic is concerned, there is no testimony that traffic or outside noises will be any louder than ordinary around a small suburban church.

Weighed in the light of the evidence in this case, the reasons given by appellee do not have a substantial relation to the safety, morals and general welfare of the community and are not reasonable.

The church in our American community has traditionally occupied the role of both teacher and guardian of morals. Restrictions against churches could therefore scarcely be predicated upon a purpose to protect public morals.

After a careful study of the entire record, we conclude that the refusal of the appellee to grant the permits sought, there being no showing that such refusal was in the furtherance of the public welfare, safety, morals or that it would materially injure neighboring residential property, was arbitrary and unreasonable. The judgment of the trial court is reversed and judgment here rendered granting the appellants the relief for which they prayed.