[No. 33589. *En Banc.* June 6, 1957.]

THE STATE OF WASHINGTON, *on the Relation of Wenatchee Congregation of Jehovah's Witnesses, Appellant,* v. THE CITY OF WENATCHEE *et al., Respondents.*[1]

[1]Reported in 312 P. (2d) 195.

*Lowell D. Sperline* (*Hayden C. Covington*, of counsel), for appellant.

*James Arneil*, for respondents.

Finley, J.—The Wenatchee Congregation of Jehovah's Witnesses is appealing from the refusal of the trial court to mandamus the board of adjustment and the city engineer to issue a special use or zoning permit for the building of a church in a zoned residential (R-1) district of the city of Wenatchee.

Section III of ordinance No. 1117 zones the city into (a) two residential districts, R-1 and R-2; (b) a commercial district, C-1; and (c) an industrial district, I-1.

Section IV of the zoning ordinance, as amended, provides:

"In an R-1, Residential District no building shall be used, and no building shall hereafter be erected or structurally altered, unless otherwise provided in this ordinance, except for one or more of the following uses:

". . .

"5. Public schools, parochial schools and churches *if approved by the Planning Commission.*" (Italics ours.)

Section V of the zoning ordinance *specifically* provides that churches may be established in the R-2 district. There is no prohibition of churches in the C-1 or I-1 districts.

The appellant is an unincorporated religious congregation. Its presiding minister, Rev. Selmer Johnson, acting in the capacity of trustee, entered into a contract for the purchase of land located in an R-1 zone of the city of Wenatchee. An application for a special property use permit to build a church was filed with the city engineer. He referred the matter to the city board of adjustment. Under § XXII of the zoning ordinance, the board has original jurisdiction to consider applications for special property uses in R-1 districts. This section also sets forth the standards and rules under which the board operates as follows:

"7—BOARD'S FINDINGS: In making its findings the Board shall investigate the appellant's request in relation to the provisions of this ordinance; the present land utilization pattern and density of building within the neighborhood area of the appellant's land; conditions existing or predating this ordinance concerning topography, traffic, automobile parking, and utilities; and such other information as it [is] set forth in official maps, development plans, reports, and findings of the Planning Commission. . . ."

The board of adjustment held two hearings on appellant's application to locate a church on the property in the R-1 district. Interested persons living in the area attended the hearings and voiced their objections to the building of a church at the proposed location. In addition to hearing and considering the testimony of the parties at the hearings, the members of the board personally inspected the proposed building site. After examination of the maps, records, and other documents in the matter, the board denied the appellant's application for a special property use permit on the following announced grounds:

"1. That the proposed use is within a zoned and substantially developed residential area,

"2. That the proposed use would cause an undue amount of traffic through a primarily residential district,

"3. That the Board of Adjustment recommends that it is desirable policy and that such policy has been generally

followed to allow churches only where they will be located adjacent to, or proximate to, intersecting major arterials so as to cause the least possible interference with future or established residential neighborhoods."

Thereafter, the appellant instituted the mandamus proceedings in the superior court for Chelan county, seeking to compel respondents to issue the special property use permit. After a hearing and argument, the trial judge made and entered so-called findings of fact, which could be more accurately described as conclusions of law, reading, in part, as follows:

"That denial of a special property use permit to Relator for erection of a Kingdom Hall on Ninth Street between Nelson and Ringold Streets in the City of Wenatchee by the Board of Adjustment of the City of Wenatchee was not arbitrary and capricious; was not in derogation of the right of freedom of religion; and did not deny to Relator equal protection under the law."

It is well established that zoning ordinances are constitutional in principle as a valid exercise of the police power. *State ex rel. Miller v. Cain*, 40 Wn. (2d) 216, 242 P. (2d) 505; *Village of Euclid, Ohio, v. Ambler Realty Co.*, 272 U. S. 365, 71 L. Ed. 303, 47 S. Ct. 114, 54 A.L.R. 1016. In some, if not most, zoning ordinances, churches are expressly classified in first residential districts. See *State ex rel. Seattle Title Trust Co. v. Roberge*, 144 Wash. 74, 256 Pac. 781, 278 U. S. 116, 49 S. Ct. 50, 73 L. Ed. 210, 86 A.L.R. 654. For additional illustrations of this general practice, see cases cited in *State ex rel. Roman Catholic Bishop of Reno v. Hill*, 59 Nev. 231, 90 P. (2d) 217.

Generally, zoning ordinances which wholly exclude churches in residential districts have been held to be unconstitutional. Apparently, such provisions have not survived court review for the generally-stated reason that an absolute prohibition bears no substantial relation to the public health, safety, morals, or general welfare of the community. *North Shore Unitarian Soc. v. Village of Plandome*, 200 Misc. 524, 109 N.Y.S. (2d) 803; *Board of Zoning Appeals of Decatur v. Decatur, Ind. Co. of Jehovah's Witnesses*, 233 Ind. 83, 117

N.E. (2d) 115; *Young Israel Organization of Cleveland v. Dworkin,* Court of Appeals of Ohio (1956), 133 N.E. (2d) 174; *Congregation Committee, North Fort Worth Congregation, Jehovah's Witnesses v. City Council, etc.,* Court of Civil Appeals of Texas, 287 S.W. (2d) 700; *State ex rel. Synod of Ohio, etc. v. Joseph,* 139 Ohio St. 229, 39 N.E. (2d) 515, 138 A.L.R. 1274; *State ex rel. Roman Catholic Bishop of Reno v. Hill, supra;* 2 Yokely, Zoning Law and Practice (1953) 110, § 222; 58 Am. Jur. 1011, § 125.

However, in *Corporation of Presiding Bishop, etc., v. City of Porterville,* 90 Cal. App. (2d) 656, 203 P. (2d) 823, the California court expressed a view contrary to the prevailing weight of authority. The essence of the reasoning of the California court seems to be that zoning legislation which prospectively treats all religious groups alike, *i.e.,* prohibits prospectively all churches in certain zones, if otherwise reasonable, may be a valid and a proper nondiscriminatory, nonarbitrary exercise of state police power. This viewpoint rejects the reasoning of the weight of authority that churches may be excluded, or zoned out of particular areas, only on the basis of traffic or other hazards substantially related to public health or safety. The viewpoint of the weight of authority may be an extreme one. It ignores the basic premise of modern day zoning legislation which emphasizes the best and most reasonable land utilization possible, considering the best interests of the entire community. It permits any church group, absent the factor of traffic hazards, substantially related to public health and safety, to acquire land and to establish a church, irrespective of other factors which may be of significant public interest, and normally considered and emphasized in present day community land use planning programs.

In any event, the Wenatchee ordinance is not one of absolute prohibition. It is a permissive ordinance. As to such ordinances, the weight of authority is to the effect that a denial of a permit must be based on valid or substantial evidence showing that granting the permit would be detrimental to the health, safety, morals, or the general wel-

fare of the community. *Congregation Committee, North Fort Worth Congregation, Jehovah's Witnesses v. City Council, supra.*

 Before discussing the reasons advanced by the board of adjustment in support of its decision, it may be well to mention that, in reviewing the decision of the board, the trial court acted as a court of review for error of law and could not try the case *de novo*. Likewise, upon this appeal, we are governed by the oftstated rule that, regardless of how this court might have decided the question before the board, we are not warranted in substituting our judgment for that of the board or interfering in its determination of the matter, unless the decision under review is arbitrary and unreasonable and constitutes an abuse of discretion. It should also be noted that the *ultimate* burden of proof relative to alleged arbitrary and capricious zoning action rests upon zoning authorities and not upon a property owner who is seeking a permit. In *State ex rel. Synod of Ohio, etc., v. Joseph*, 139 Ohio St. 229, 39 N.E. (2d) 515, the Ohio court said:

"In determining whether respondents' administrative acts and policies may be upheld, it should be observed that the usual presumption of the validity of the acts of public boards and officials, does not apply to acts involving the forfeiture of an individual's rights or the depriving him of the free use of his property. 22 Corpus Juris, 141; *Deaver v. Napier*, 139 Minn., 219, 166 N.W., 187; *Christ v. Fent*, 16 Okla., 375, 84 P., 1074. Applying this exception to a case like the one at bar, where public officials seek under a zoning ordinance to deny a landowner a particular use of his property, the highest court of Maryland has held that the board of zoning appeals has the burden of showing reasons sufficient to support its authority in refusing a building permit. *Applestein v. Mayor and City Council of Baltimore*, 156 Md., 40, 47, 143 A., 666."

Now, as to the reasons advanced by the board in the case at bar in support of its decision. The application was denied, first, on the basis that the proposed use would be within a zoned and substantially developed area. The effect of upholding this objection as a valid reason for the board's

action would be to force the appellant into undeveloped sections of the city, since it may be likely that appellant would be met with a similar objection in any other well-developed residential district of the city. Similar objections have been expressly repudiated as a ground for refusing to permit the erection of a church in a residential district. *State ex rel. Synod of Ohio, etc. v. Joseph, supra; O'Brien v. Chicago*, 347 Ill. App. 45, 105 N.E. (2d) 917; 1 Rathkopf, The Law of Zoning and Planning 259; 2 Yokely, Zoning Law and Practice, *supra*.

The board's other reasons for denying the requested permit emphasize the *possibility* of the creation of parking and traffic problems. This finding or ground stated by the board is expressed in terms of possibilities not probabilities or actualities. It certainly is not a specific finding or conclusion that traffic congestion *will result which will be detrimental to the health and safety of the community*.

Technically, in the absence of this, the action of the zoning authorities was arbitrary and capricious. But the above-mentioned interpretation of the board's conclusion or ground of decision may appear to be too technical, or merely quibbling relative to terminology. So for the purpose of argument, let us assume that the board specifically concluded that traffic congestion would result and would be detrimental to public safety. The question then would be whether there is substantial evidence in the record to support the administrative determination. The record shows that appellant congregation consists of approximately eighty members. The Reverend Johnson, the presiding minister, stated that when the membership totaled one hundred or one hundred fifty persons, another church would be constructed at a different location. His testimony regarding parking space was as follows:

"Q. Was there any testimony taken or information provided as to the lack of parking space? A. No, all the evidence showed there was plenty. Q. In other words, the only evidence which they had was what you presented? A. Yes. Q. and that was to what effect? A. It was to the

effect that there was more parking space there than was actually required."

The record is not clear as to the width of Ninth street. Suffice it to say, however, that it is fifty to sixty feet wide, with an improved surface of from twenty-two to thirty feet.

Apparently, no systematic traffic check, and certainly no accurate or detailed traffic survey of the area was made by the respondents. There is no evidence in the record (a) as to the occurrence, time, duration or extent of any periods of heavy traffic in the area, and (b) no evidence that the time of any such periods of heavy traffic would overlap or coincide with the time of any regular church activities. The minutes of the board do indicate that a substantial number of property owners in the area in question filed a petition, appeared at hearings before the board, or protested against issuance of a permit to appellant. The minutes of the board show that in the petitions and at the hearings property owners stated that issuance of the permit would result in traffic congestion and would adversely affect the residential nature of the area.

On the basis of the latter proof, such as it is, the respondents contend that the location of appellant's church at the proposed site would materially contribute to severe traffic congestion, particularly since Ninth street is already allegedly burdened with a heavy flow of traffic from the nearby junior college and also from the family residences located in the vicinity. We do not think there was substantial evidence before the board to support this contention.

A contention comparable to the latter-mentioned one of respondents in the instant case was analyzed and disposed of by the Indiana court in the case of *Board of Zoning Appeals of Decatur v. Decatur, Ind. Co. of Jehovah's Witnesses, supra,* as follows:

"It is no doubt true that automobile traffic often chokes the streets and endangers both the general and the traveling public. However, it is rarely, if ever, that people entering or leaving a church cause or contribute to traffic accidents. It would seem reasonable to assume that if regulation is necessary in the interest of the safety, convenience

and welfare of the general public, that should be regulated which has a direct effect upon such general welfare. This can be, and is, done generally by traffic police, signs and other reasonable regulations imposed alike upon all persons using the streets in the vicinity of churches, without undue interference with the right of worship and free assembly."

In *State ex rel. Tampa, Florida, etc. v. Tampa,* 48 So. (2d) 78, the Florida court stated:

"The contention that people congregating for religious purposes cause such congestion as to create a traffic hazard has very little in substance to support it. Religious services are normally for brief periods two or three days in the week and this at hours when traffic is lightest—early in the morning, early in the evening and at 10:00 and 11:00 on Sundays. Many churches are like this one, in residential areas, where traffic is not heavy and where there are side streets and other facilities for parking. The church involved here is a small church which is shown to have ample off-street parking space for all ordinary purposes."

■ We are convinced that, on the basis of the record before us, the refusal of the board of adjustment and the city engineer to issue the special use or zoning permit sought by appellant was not in furtherance of the health, safety, morals or general welfare of the community. The action of the board was arbitrary and unreasonable.

The judgment should be reversed and the writ of mandamus relative to the special use or zoning permit should be issued.

It is so ordered.

HILL, C. J., SCHWELLENBACH, ROSELLINI, and FOSTER, JJ., concur.

MALLERY, J. (concurring specially)—While the validity of zoning ordinances is no longer the subject of controversy when they conform to constitutional requirements, they cannot confer legislative powers upon administrative officers without prescribing adequate legislative standards. In *State ex rel. Ogden v. Bellevue,* 45 Wn. (2d) 492, 275 P. (2d) 899, we said:

"A property owner has a vested right to use his property under the terms of the zoning ordinance applicable thereto. *State ex rel. Hardy v. Superior Court*, 155 Wash. 244, 284 Pac. 93. A building or use permit must issue as a matter of right upon compliance with the ordinance. 9 Am. Jur. 203, § 7. The discretion permissible in zoning matters is that which is exercised in *adopting* the zone classifications with the terms, standards, and requirements pertinent thereto, all of which must be by general ordinance applicable to all persons alike. The acts of administering a zoning ordinance do not go back to the questions of policy and discretion which were settled at the time of the adoption of the ordinance. Administrative authorities are properly concerned with questions of compliance with the ordinance, not with its wisdom. To subject individuals to questions of policy in administrative matters would be unconstitutional. Art. I, § 12, of the constitution of the state of Washington, provides:

" 'No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations.' "

Section IV of the zoning ordinance in question provides:

"In an R-1, Residential District no building shall be used, and no building shall hereafter be erected or structurally altered, unless otherwise provided in this ordinance, except for one or more of the following uses: . . .

"5. Public schools, parochial schools and churches *if approved by the Planning Commission.*" (Italics mine.)

To give effect to the italicized phrase would render the ordinance unconstitutional, since no proper legislative standards are supplied for the guidance of the planning commission.

We are required to give a statute such an interpretation as will make it constitutional when it is possible to do so. It can be done in the instant case by considering the italicized phrase as being surplusage.

This interpretation of the statute entitles appellant to the relief sought.

OTT, J. (dissenting)—The majority have determined that "The action of the board was arbitrary and unreasonable," and that, hence, a writ of mandamus should be granted

compelling the board to issue a building permit, as provided by ordinance No. 1117 of the city of Wenatchee. I dissent for the following reasons:

(1) The majority hold that, in this mandamus proceeding, "the trial court acted as a court of review for error of law and could not try the case *de novo*." I do not agree. The sole issue before the *trial* court was the alleged conduct of the board of adjustment in arriving at its determination not to grant the building permit. In order to make an adjudication of whether or not the board's acts were arbitrary and unreasonable, the court must review the evidence which the board considered in arriving at its decision. If the issue of arbitrary and unreasonable conduct *was not tried de novo* in the superior court, in what constitutional tribunal was that issue previously determined? To ask the question is to answer it.

The witnesses before the trial court testified concerning the single issue of whether or not the board acted arbitrarily and unreasonably in denying the issuance of the permit. In addition to this testimony, the court considered documentary evidence and viewed the area in question. This proceeding was a trial *de novo* in the superior court. The determination made by the trial court was a factual one, and one in which the court entered specific findings. The findings of a trial court will not be reversed by this court unless the evidence preponderates against such findings. *Gray v. McDonald*, 46 Wn. (2d) 574, 283 P. (2d) 135 (1955); *Irwin v. Sanders*, 49 Wn. (2d) 600, 304 P. (2d) 697 (1956). In my opinion, the evidence does not preponderate against the trial court's findings.

(2) The majority state that "It should also be noted that the *ultimate* burden of proof relative to alleged arbitrary and capricious zoning action rests upon zoning authorities and not upon a property owner who is seeking a permit," citing *State ex rel. Synod of Ohio, etc., v. Joseph*, 139 Ohio St. 229, 39 N. E. (2d) 515, 138 A.L.R. 1274 (1942).

I have no quarrel with the fact that this may be the rule in Maryland and Ohio, *but it is not the rule in Washington.*

We have consistently held that *there is a presumption that public officers perform their duties regularly and in accordance with the law. Smith v. Hollenbeck*, 48 Wn. (2d) 461, 294 P. (2d) 921 (1956). We have further held that the burden of establishing that a public officer has acted arbitrarily and capriciously in the exercise of his duties *rests upon the one who asserts it.* This rule was specifically applied to the action of a zoning board in *Lillions v. Gibbs*, 47 Wn. (2d) 629, 289 P. (2d) 203 (1955). The fact that this case involved an application for a permit to construct a church does not warrant a different rule as to the burden of proof than that applied in the *Lillions* case. Hence, I cannot agree that, in this jurisdiction, there is a presumption that the conduct of the board in denying the permit was arbitrary and capricious, that the burden of proof is upon the board to establish that its action was reasonable.

(3) This is a mandamus proceeding, and we have consistently held that mandamus will not lie to compel the performance of acts or duties which call for the exercise of discretion on the part of public officers. That discretion is involved in this case is admitted when the majority, by court order, direct the board to exercise it against its judgment. When an officer engages in the performance of a duty which *is not ministerial,* our court will interfere only when the public officer's action is so arbitrary and capricious *as to evidence a total failure to exercise discretion,* and therefore, the act of the officer is invalid. *Stoor v. Seattle,* 44 Wn. (2d) 405, 267 P. (2d) 902 (1954); *Lillions v. Gibbs; supra.* The denial of the permit by the board of adjustment was based upon substantial evidence, and was not arbitrary and capricious.

(4) It is conceded, by both the appellant and the majority, that Wenatchee's ordinance with reference to zoning is constitutional. This is apparent from the fact that the majority grant relief under the ordinance. Since the constitutionality of the ordinance is not challenged, we are not concerned in this proceeding with any of the following constitutional issues: (a) denial of religious freedom, (b)

equal protection under law, (c) due process of law, and (d) proper exercise of the police power. We are concerned only with whether or not the board complied with the administrative standards set out in this admittedly constitutional ordinance. In R-1 districts (where this permit was sought), congregations were granted the right to erect, construct or alter churches, *"if approved by the Planning Commission."* (Italics mine.) The ordinance permitted construction of churches in other use zones where such approval by the board was not required.

What were the administrative standards provided by the ordinance to govern the scope of the board's authority to grant or deny a permit in R-1 districts? By section XXII of the ordinance, it was provided that (a) the board must investigate the applicant's request in relation to the provisions of the ordinance, (b) consider the present land utilization pattern and density of building within the neighborhood area, (c) study conditions existing or predating the ordinance concerning topography, traffic, automobile parking, and utilities, and (d) consider the official maps, development plans, reports, and findings of the planning commission.

The majority opinion does not indicate any departure by the board of adjustment from the administrative standards set out in the ordinance. The majority contend that the refusal to grant the permit "sought by appellant was not in furtherance of the health, safety, morals or general welfare of the community," and constituted an illegal exercise of the police power, and that this valid ordinance was *administered* in an unconstitutional manner. Since there has been no showing of any departure by the board from the administrative standards provided by the ordinance, such a contention attacks only the constitutionality of the ordinance. It does not attack the exercise of authority pursuant to it. In the absence of such a showing, I disagree with the majority's contention that the board's exercise of zoning authority, pursuant to the ordinance, was illegal.

(5) Finally, considering the case on its merits, the board did not act arbitrarily and capriciously. Two public hear-

ings were had. Seventeen interested persons were present at the hearing of June 2, 1955, and fifty-two persons attended the hearing of June 16, 1955. At these hearings, those present expressed their views concerning the traffic congestion and the anticipated traffic hazard which would result from granting the permit, and that the granting of the permit would thwart the planning commission's program of development for this area. This evidence related precisely to the standards which should govern the board in the exercise of its authority under the ordinance. In addition, the board had before it petitions signed by approximately one hundred persons who objected to the granting of the permit because a traffic hazard would be created thereby, and who alleged other objections not material to the issue here presented. The board made an on-the-ground inspection of the street condition and the adjacent lot upon which the building permit was requested.

The evidence which the board considered (all within the purview of the ordinance) consisted of maps, engineers' reports, reports of the planning commission concerning anticipated future development of the area, petitions of residents living in the vicinity, and the testimony of witnesses relative to the narrow street, the heavy travel because of the existence of a nearby school, the inadequate off-street parking, and the anticipated increased vehicular traffic. After weighing this evidence, the board, in the exercise of its discretion, unanimously concluded that, because of traffic conditions in the area which would be created thereby, the request for a building permit at this location should be denied.

In *Lillions v. Gibbs, supra,* at p. 633, we defined arbitrary and capricious action as follows:

"Arbitrary and capricious action of administrative bodies means willful and unreasoning action, without consideration and in disregard of facts or circumstances. Where there is room for two opinions, action is not arbitrary or capricious when exercised honestly and upon due consideration, even though it may be believed that an erroneous conclusion has been reached. [Citing case.]"

Applying the above definition to the facts in the case at bar, there is nothing in the record which would indicate that the action of the board was in willful disregard of the facts or that its action was in any manner arbitrary. Neither can it be said, in the light of nearly one hundred protests, that there was not "room for two opinions" concerning the possibility of traffic hazards and congestion, had the permit been granted.

The determination which the board made was in conformity with the standards provided by the ordinance. Considering this case on its merits, there was no showing of arbitrary or capricious action on the part of the board in the exercise of its discretion under the powers granted to it by the ordinance. The trial court, after hearing similar testimony and considering similar evidence, found that the action of the board was not arbitrary and capricious.

In my opinion, the judgment of the trial court should be affirmed, and the writ of mandamus denied.

DONWORTH, J., concurs with OTT, J.

WEAVER, J., did not participate.