CITIES SERVICE OIL COMPANY *v.* BOARD OF COUNTY COMMISSIONERS OF PRINCE GEORGE'S COUNTY ET AL.

[No. 333, September Term, 1960.]

*Decided July 11, 1961.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Robert A. Diemer,* for appellant.

*Robert B. Mathias* and *Russell W. Shipley,* with whom was *Lionell M. Lockhart* on the brief, for Board of County Commissioners of Prince George's County and Chris Sondberg, Building Inspector for Prince George's County, two of the appellees.

Submitted on brief by *Thomas R. Brooks* for Board of Zoning Appeals of Prince George's County, the other appellee.

BRUNE, C. J., delivered the opinion of the Court.

The original pleading filed in this case, headed "Declaration and Petition," seems comprehensive as well as probably unique. In a single action at law the plaintiff-appellant, Cities Service Oil Company (Cities Service) has named as parties defendant the Building Inspector for Prince George's County (the Inspector), the Board of County Commissioners of Prince George's County (the Commissioners), the Maryland-National Capital Park and Planning Commission (hereinafter called Parks and Planning) and the Board of Zoning Appeals of Prince George's County (BZA); and it seeks assorted remedies against them. The "First Count" is an appeal from the BZA, which denied Cities Service's application for a variance. The "Second Count" seeks declaratory relief in very general terms, presumably against all of the defendants. The "Third Count" seeks a writ of mandamus to require the Inspector "and all other municipal corporate authorities of this County as may be necessary and are parties defendant" to rescind a "stop work" order issued by the Inspector to halt construction of a filling station service building. The BZA's demurrer to the Second and Third Counts was sustained, and that ruling is not attacked on this appeal. Parks and Planning's demurrer was overruled, but it did not file any further pleading. In its demurrer it denied the allegations of the "Declaration and Petition" asserted as the basis for joining it as a party "as a regulatory municipal agency charged with the administration and enforcement of Zoning Ordinances * * *." It seems to have taken little part in the trial and did not participate in the appeal. After extended hearings covering all of one day and a half of another, the trial court denied the relief sought and dismissed the "pe-

tition." Cities Service appealed. No procedural questions have been strongly pressed (indeed, only one is raised at all) on this appeal, and we find it unnecessary to go into any such questions.

The controversy here grows out of the desire and efforts of Cities Service to erect a new filling station at the southeast corner of the intersection of 55th Avenue and Landover Road in a part of Prince George's County comprised in the Metropolitan District, defined in Maryland-National Capital Park and Planning Commission Act (Ch. 780 of the Acts of 1959, sometimes referred to below as the Act or the Parks and Planning Act). The sketch reproduced below will be of assistance in our presentation and discussion of the case. It shows the location, outline and recorded plat numbers of the lots here involved, and some of their dimensions, and the location of the appellant's service building now partly constructed.

The lot numbers on the above sketch are those shown on a duly recorded plat of a subdivision which included some additional land. When it was recorded does not appear. Cities Service bought lots 7, 10 and 11 and took title thereto by a deed containing a metes and bounds surveyors' description, but it had actual as well as constructive knowledge that they were subdivision lots. We infer that the plat had been recorded before either Cities Service's predecessor in title or the purchasers of adjacent lots bought their properties. All of the lots shown on the sketch had been zoned as residential, but lots 7, 10 and 11 have been rezoned as C-2 (General Commercial), a classification which permitted filling station use. This is said to have been done before Cities Service purchased the lots, and a building permit is also stated to have been obtained before the purchase was made. (It seems difficult to reconcile these statements with the date of the deed as given by a real estate representative of Cities Service, but we assume these statements to be correct.) This permit was issued after Cities Service's first plans had been submitted to Parks and Planning and found deficient in two respects. Cities Service had then revised its plans and obtained a permit. Soon afterwards it received a stop work order, which was rescinded after a conference between a Cities Service representative and the Inspector and after a call from the latter to one of the men in Parks and Planning. About a week or two later a second stop work order was issued by the Inspector. Meanwhile Cities Service had put in the footings for the service building and had put up a good deal of the cinder block walls. It had also ordered equipment for the station, most (if not all) of which was usable elsewhere.

The second stop work order was based upon an alleged violation of the rear yard set-back requirements of the Zoning Ordinance as between the building and the southerly side of lot 7—that is the line dividing lots 7 and 8. There was a controversy, which is the principal issue in this case, over the question whether the line in question should be regarded as a rear line, or as a side line of the Cities Service tract. If it is the former, a 20-foot set-back is required; if the latter, only an 8-foot set-back is needed. The actual distance from

the southeast corner of the building to the corner of the north and west lines of lot 8 is somewhat less than 8 feet, probably about 6½ or possibly 7 feet.

Cities Service appealed to the BZA for a variance. It contended (as it does here) that its three lots constitute a single property, that under the definition of the "front line" of a corner lot contained in Sec. 10.0 of the County Zoning Ordinance, the property fronts on 55th Avenue, so that the line between record lots 7 and 8 is now a part of a side line and not a rear line of the property and hence that the 8-foot setback is applicable, and (less clearly before the BZA than here) that the only practicable location for the service building is at the location where it was being constructed, and that it would impose serious and unnecessary hardship upon Cities Service not to permit it to build at that location and to require it to remove the building already partly constructed. It appears that the County Attorney had taken the view that the rear line of record lot 7 which itself fronted on Landover Road continued to be a rear line, notwithstanding that Cities Service had acquired lots 7, 10 and 11 and proposed to use them as a unit and that this view was the basis for the Inspector's issuing of the second stop order. Following the hearing at which representatives of Cities Service and the owners of lots 8 and 9 were heard, the BZA filed an opinion which seems to have been in accord with this view, though its reference to the rear line of lot 10, instead of the rear line of lot 7 seems erroneous. The attribution of hardship only to the fact that construction had started seems to ignore the confusion due to different interpretations of the zoning law by different public officials. The opinion states that: "it was determined that petitioner's appeal was based on hardship arising from the fact that construction had commenced. It was also determined that Petitioner's construction had violated the rear building restriction line of Lot 10, Block 4, Powell's Addition to Villa Heights subdivision * * * contrary to the Zoning Ordinance." The BZA adopted a resolution following its opinion that "a granting of the relief prayed would be a substantial impairment of the intent, purpose and integrity of the Zoning Ordinance and the petitioner's request is therefore DENIED."

The most important question in this case in all of its phases is whether or not the acquisition by Cities Service of all three of these record subdivision lots for use as a unit made them one corner lot for the purpose of determining which is the front lot line, and which the rear line or lines, and which the side lines. The definition of the front of a corner lot under Sec. 10.0 of the Zoning Ordinance makes the shortest side that abuts a street the front. This definition may possibly be based upon the supposition that the shorter frontage is likely to be on the more important street, where front footage is apt to be more expensive. Whatever may be the basis for the rule, and whether or not it is sound in this particular case, it is the clearly stated rule and its validity is not here questioned. It appears from the action of Parks and Planning and from the testimony of one of its important officials, that the staff of the Commission construes the Zoning Ordinance as producing the result for which Cities Service contends. It also appears that a difference of opinion on this question between Parks and Planning, a bi-county organization, and officials of Prince George's County resulted in the stop-go-and-stop predicament in which Cities Service finds itself. Doubtless, that was what occasioned the trial court's reference to the familiar saying that hard cases make bad law.

The provisions which bring either the 20-foot or the 8-foot set-back requirement into operation are found in the Sections of the Zoning Ordinance dealing with commercial properties (C-1 or C-2) adjoining a residential zone. The set-back provisions of Sec. 20.0 dealing with C-1 properties are also made applicable under Sec. 21.0 dealing with C-2 properties by the terms of Sec. 21.0. Sec. 20.32 requires an 8-foot set-back from side lines, and Sec. 20.33 requires a 20-foot set-back from rear lines of commercially zoned properties abutting upon residentially zoned areas.

On the facts of this case, there is no room for question that under the definitions contained in Sec. 10.0 of the Zoning Ordinance, lot 7, as platted, is an interior lot fronting on Landover Road. Nor is there room for question, nor is any raised that lot 10 as platted is an interior lot fronting on 55th Avenue. Likewise, lot 11 as platted, a corner lot, has a

shorter frontage on 55th Avenue and hence, under the applicable definition in Sec. 10.0, fronts on that street and not on Landover Road. If all three lots are considered as a unit, also by virtue of Sec. 10.0 the tract would front on 55th Avenue.

We have been referred to Sections 70-74 of the Parks and Planning Act, *supra* (Ch. 780 of the Acts of 1959) which may be traced back in large measure through Sec. 2-H of Ch. 992 of the Acts of 1943, Sec. 8 of Ch. 714 of the Acts of 1939, to Sec. 14 of Ch. 448 of the Acts of 1927. Under these provisions no plat of a subdivision or resubdivision in the Metropolitan District described in the Act may be recorded in Prince George's (or Montgomery) County without the prior approval of Parks and Planning. There is no claim here that any new subdivision or resubdivision plat of lots 7, 10 and 11 has been filed, and it is virtually conceded that no such plan has been filed or has been approved by Parks and Planning. The nearest approach to such procedure has been the submission of plans to the staff of Parks and Planning which contemplated the treatment of these three lots as so reoriented, and the approval of such plans by one or more members of the Parks and Planning staff. They, as already noted, apparently regarded such reorientation by the purchaser as permitted under the Zoning Ordinance. Also as we have noted, this view was supported by the testimony of one of the principal members of the staff given at the hearing in the Circuit Court.

This construction of the Zoning Ordinance is also sought to be supported by testimony as to an alleged custom in Prince George's County, but we find this testimony rather weak and unconvincing. Such as it is, it seems directed chiefly to old subdivisions where plats had been recorded many years ago and where Parks' and Planning's requirements were not met. It is admitted that the subdivision here involved did meet them.

We find nothing in the Parks and Planning Act which calls or provides for a change in the character of the lot line of duly recorded platted subdivisions from front or rear lot lines to side lot lines because two or more such lots adjacent to each

other come under common ownership. If such a result were to follow, the requirements of the Act calling for Parks and Planning approval for subdivision (including resubdivision) plats could be made nugatory by the carefully selective action of a purchaser of several lots at and near a street intersection, planned solely with a view to his own benefit. It would deprive the purchaser of an adjoining platted lot of such protection to his property as the land records might indicate, and it would do so without the benefit of any public body passing upon a change having a serious impact upon the status of his lot from a zoning point of view. In this connection we may note that while lot 7 was zoned as residential (R-55), a 20-foot set-back was also required along its rear line separating it from lot 8. (See Secs. 14.53 and 13.53 of the Zoning Ordinance.) The appellant's contention would, in short, permit private rezoning by the purchaser of the strips of his land adjacent to the property of his neighbors. We think that the implications of the Act (particularly Sec. 73) and of the Zoning Ordinance are that lot lines shown on a duly recorded subdivision plat retain their character as front or rear or side lines, as the case may be, unless and until either a new plat duly approved by public authority, Parks and Planning, is filed, or until the Ordinance is amended so as to change the definitions of such lines.

We turn next to the contention of the appellant which is applicable to both its appeal from the BZA's denial of a variance and to its petition for a writ of mandamus against the Inspector and others. This is the contention that a refusal to permit it to construct its service building as planned amounts to a deprivation of its property without due process of law in violation of the Constitution of the United States and, we suppose, under Article 23 of the Maryland Declaration of Rights. There is evidence that it would be inconvenient and expensive to Cities Service not to be able to proceed to use the property for a filling station as planned, that its only use for the property is as a filling station and such use is the highest and best use of the land. It does not, however, in our view, measure up to proof anywhere near to a showing that the application of the zoning law, as we inter-

pret it, prevents any reasonable use of the property, nor do we find any such proof. Yet we think that is the test which the appellant would have to meet to show constitutional invalidity of the restriction. The fact that the property would be more valuable to the owner, if free of the restriction, is not enough. *Walker v. Bd. of County Com'rs of Talbot County,* 208 Md. 72, 95, 116 A. 2d 393, cert. den. 350 U. S. 902; *Serio v. Mayor & C. C. of Baltimore,* 208 Md. 545, 119 A. 2d 387; *Marino v. Mayor & C. C. of Baltimore,* 215 Md. 206, 137 A. 2d 198; *Adler v. Mayor & C. C. of Baltimore,* 220 Md. 623, 631, 155 A. 2d 504.

In view of our holdings (a) that the acquisition of these three lots by a single owner did not of itself change the character of the front, rear and side lines of these individual platted lots and (b) that there is no deprivation of property without due process of law, little need be said of the petition for a writ of mandamus against the Inspector and others or of the appeal from the BZA.

With regard to the petition for mandamus, it follows from the first of the above holdings that the line between lots 7 and 8 continues to be a rear lot line, and it seems clear that the service building invades the 20-foot set-back area. Under Section 98 of the Parks and Planning Act, it is the duty of the Inspector to adhere to the provisions of the Act and of the Zoning Ordinance. Their enforcement, as we have concluded, involves no deprivation of property without due process of law. Accordingly, we think that the Inspector acted in accordance with law in issuing the stop work order, and we find no basis for the issuance of a writ of mandamus to require him to revoke it.

Even though the BZA seems to have made an erroneous reference to a lot line and though it may have ignored the contribution which a difference of opinion among public officials may have made to the hardship on Cities Service due to the start of construction, it seems too clear for argument that an encroachment of more than 13 feet on the 20-foot required set-back is no inconsequential or trivial matter in this situation. We repeat that we have found no deprivation of any property rights of the appellant without due process of law.

Accordingly, we think that the BZA's action in denying a variance did not amount to an abuse of its discretion and that the dismissal of the appeal of Cities Service from that denial was correct. *Oursler v. Board of Zoning Appeals of Baltimore County,* 204 Md. 397, 104 A. 2d 568; *Serio v. Mayor & C. C. of Baltimore, supra,* 208 Md. at 553-555.

The appellant complains that the trial court made no declaration of rights, such as it sought by its Second Count. We think that the ruling of the trial court effectively settled the major issue as to which a declaration of rights was sought, and certainly this opinion discusses it *in extenso* and resolves the question of interpretation of the zoning laws. That is the only question with regard to which the appellant's brief seeks a declaration of rights. No one seems to have contested one proposition as to which it sought a declaration of rights—that the owner of two or more lots in an existing subdivision may construct a building on two or more of them without regard to lot lines shown on a recorded plat between his own lots.

We see no occasion to extend this opinion further and are of the opinion that the order of dismissal which is appealed from should be affirmed.

*Order affirmed, with costs.*