Michael Catalano, J.
Petitioner seeks judgment annulling respondents’ determination, and canceling the building permit, for erection of a building at the rear of 161 to 167 Windsor Avenue, Buffalo, New York.
Petitioner states that he owns real property on the westerly side of Rumsey Lane, at No. 25, in that city; that he is aggrieved since his land adjoins the easterly line of said 161-167 Windsor Avenue, owned by Calasanctius Preparatory School, and his land will be depreciated by the building that will deprive his land of light and air, cause the nuisance of wholesale food deliveries, cooking odors, garbage collection, gymnasium noise and trash disposal in violation of the Buffalo city ordinances; that on February'll, 1966, the Director of Buildings granted a building-permit for the erection of a gymnasium, library and cafeteria; that on March 2,1966, respondents denied petitioner’s appeal to cancel said permit.
Respondents deny the grievance or any illegality.
The query is whether respondents’ determination made as a result of a hearing held, and at which evidence was taken pursuant to direction by law, is, on the entire record, supported by substantial evidence. (See CPLR 7803, subd. 4.)
The evidence taken at the hearing was abundant. The four contiguous lots owned by the school are located on the east side of Windsor Avenue, which runs north and south; these lots are known as Nos. 177, 171, 167 and 161 from north to south; the westerly side of the composite lot abuts for its full length upon Windsor Avenue. The north side of this lot extends 157.68 feet east from Windsor Avenue abutting for its full length upon Rumsey Road. This lot is used entirely for a school use, containing four dwellings and four garages in the rear of them. *21 The proposed building will be placed in the southeast corner of the lot behind two dwellings, attached to the southernmost building, low, “ tasteful ” and residential in appearance.
The petitioner owns a lot 70 by 94 feet, the narrow west side of which abuts 70 feet of the east side of the school lot. His lot is at the end of a cul-de-sac called Bumsey Lane that runs southerly from Bumsey Bo ad, and his dwelling is the closest to the proposed building.
The main issue was stated by the petitioner’s attorney on page four of the transcript of the hearing: “ Next, and possibly the strongest reason for us being here today is the totally preposterous presumption, as we see it, that this building will be constructed on a corner lot.” (Emphasis supplied.) A member of the school’s board of trustees said at page 13: “ The only thing we are concerned with, and they admit, it’s the definition of a corner lot.” (Emphasis supplied.)
The Assessors of Buffalo assess this as one lot. The immediate area is properly called “ first class residential,” having a total assessed valuation of about 2% million dollars.
The Galasanctius School was started eight or nine years ago at the corner of Windsor Avenue and Bumsey Boad. Presently 140 students attend and reside there; in the future the maximum will be 250. They are all boys with an I. Q. extending to 130 and up, coming from all over New York State, the United States and foreign countries. Seventy-five graduated, receiving $175,000 of scholarships from California to Harvard; all of whom had New York State scholarships.
The school is accredited and was incorporated under the laws of New York State, which has requested it to build a gymnasium.
It is located on the border of Delaware Park, around which many other schools are located, including the State of New York College, the Historical Society, the Nichols School, the Elmwood Franklin School, the School of Practice for Children, the Sacred Heart School for girls, a school conducted by Catholic nuns; a Jewish group bought a lot for the Nicodemus School.
The teachers include deported monks from Hungary and the rector of the Ascension Episcopal Church; the latter teaches some of the boys who are not Catholics. These teachers have dedicated their lives to the education of gifted children, Negroes, Catholics, Protestants, Jewish. They desire to do the best they can in the cultural center of Buffalo to educate children, not to “ bother the neighbors.”
The only sale noted in the entire record was of Windsor Avenue property, an improved parcel of land sold to the school “ at quite a profit ” for the vendor.
*22 The respondents’ powers, as a Board of Appeals, are broad. “ Where there are practical difficulties or unnecessary hardship in the way of carrying out the strict letter of any such ordinance, -the board of appeals shall have the power in passing upon appeals, to vary or modify the application of any of the regulations or provisions of such ordinance relating to the use, construction, structural changes in, equipment or alteration of buildings or structures, or the use of land, so that the spirit of the ordinance shall be observed, public safety and welfare secured and substantial justice done.” (General City Law, § 81, subd. 4. )
This proceeding shall be disposed of at Special Term rather than the Appellate Division. “ 1. Any person or .persons, jointly or severally aggrieved by any decision of the board of appeals or any officer, department, board of bureau of the city, may apply to the supreme court for relief by a proceeding under article seventy-eight of the civil practice law and rules. * * * (c) the court at special term shall itself dispose of the cause on the merits ”. (General City Law, § 82, subd. 1.)
Petitioner must be aggrieved, his personal or property rights injured, before he may maintain this proceeding to restrain the alleged violation of ordinances enacted to protect the public. (Rice v. Van Vranken, 225 App. Div. 179, 180-181, affd. 255 N. Y. 541.) Mere noise and other inconveniences are insufficient to deny a permit to a parochial school. (Archbishop of Oregon v. Baker, 140 Ore. 600.)
Here, petitioner’s fears of future noise and other inconveniences are insufficient, particularly where his property valuation has apparently increased rather than decreased since the advent of the school next door.
A lot is generally a parcel or plot of ground (Multiple Dwelling Law, § 4, subd. 31). It is regulated State-wide as to dwellings thereon (ibid., §§ 11, 28), prohibited uses (ibid., § 12), occupancy of an entire block (ibid., § 26, subd. 5, par. a), abandonment (Real Property Tax Law, § 560, subd. 1), adverse possession under written instrument or judgment (Real Property Actions and Proceedings Law, § 511), use for burial (Membership Corporations Law, § 85).
No statute specifically limits the size of a school to be built in an “ R 1 ” one-family district in Buffalo provided that, as to a private, nonprofit school, it must be “ chartered or accredited by the state education department and offering courses of instruction substantially equivalent to those offered by public schools ” (Buffalo Zoning Ordinance, ch. LXX, § 4, subd. A, *23 par. [3]). The lot in Buffalo may be “ a parcel of land for occupancy by a building or use and the accessory buildings or uses customarily incident to it, including such open spaces as are required by this chapter and such open spaces as are arranged and designed to be used in connection with such building. A lot may be or may not be the land shown as a lot on a duly recorded plot.” (Ibid,, § 23, subd. [26],) A corner lot may be “ a lot of which at least two adjacent sides abut for their full lengths upon streets.” (Ibid., [a].) Before 1953 a corner lot was limited: ‘ ‘ For the purpose of this section, any area of a corner lot in excess of 6,000 square feet shall be deemed an interior lot. ” (Ibid., § 25, amd. 1953 and replaced by the present Zoning Ordinance. Item No. 176, C. C. P., July 21, 1953.)
Clearly, a corner lot in Buffalo may be any size as long as at least two adjacent sides abut for their full lengths upon streets, even to the extent of abutting on four streets, including a whole block.
The Multiple Dwelling and Multiple Residence Laws, being in pari materia, should be considered, but when considered, they express a clear limitation on size, not found in Buffalo’s Ordinance (ch. LXX, § 23, subd. [26] [a]).
Section 4 (subd. 31, par. a) of the Multiple Dwelling Law provides: “ A ‘ corner lot ’ is a lot of which at least two adjacent sides abut for their full length upon streets or public places not less than forty feet in width. That portion of a corner lot in excess of one hundred feet from any street on which the lot abuts shall be considered an interior lot.” (Almost verbatim in Multiple Residence Law, § 4, subd. 32, par. a.)
Cities Serv. Oil Co. v. Board of County Comrs. (226 Md. 204, 209) involving a filling station on a proposed corner consisting of three lots on a “ duly recorded plat of a subdivision which included some additional land,” which three lots were zoned “ General Commercial ” for filling station use, is distinguishable because the zoning ordinance limited the size of a corner lot and the court stated (pp. 212-213): “ We find nothing in the Parks and Planning Act which calls or provides for a change in the character of the lot line of duly recorded platted subdivisions from front or rear lot lines to side lot lines because two or more such lots adjacent to each other come under common ownership.”
Here, the Buffalo Ordinance specifically omits this necessity to keep all lots as plotted on record: “ A lot may be or may not be the land shown as a lot on a duly recorded plot.” (Chap. LXX, § 23, subd. [26].)
Except when defined by statute or ordinance, a lot is a unit of real property, possessing unity of ownership, use, separation *24 of physical environment or custom of the community. (People v. Krinka, 177 N. Y. S. 846, 847.)
Here, not one, but all elements exist. The school owns the entire corner lot, it alone uses the lot, its separate physical environment is scholastic as distinguished from residential, it follows the custom of other schools in the community in seeking to provide a gymnasium, library and cafeteria for its students.
“ Zoning ordinances, generally, will not be permitted to affect schools, except by way of protecting them; and school authorities are vested with building powers, by state law or constitution, which may not be inhibited by municipal zoning ordinances.” (The Law of Zoning by Metzenbaum, vol. 2, p. 1455. See, also, Ann. 36 ALR 2d 653-668; Ann. 74 ALR 2d 380-381.)
No court may substitute its judgment for that of the board it reviews unless found to be arbitrary, unreasonable and an abuse of discretion. (Matter of Diocese of Rochester v. Planning Bd. of Town of Brighton, 1 N Y 2d 508, 520.) No law requires a city school to be built in a sparsely settled area, and, because of its high purposes, mere pecuniary loss to a few should not bar its erection and use. (Ibid., pp. 524-525.)
“ Thus church and school and accessory uses are, in themselves, clearly in furtherance of the public morals and general welfare. The church is the teacher and guardian of morals (State ex rel. Synod of Ohio v. Joseph, 139 Ohio St. 229) and 1 an educational institution, whose curriculum complies with the state law, is considered an aid to the general welfare ’ (Archbishop of Oregon v. Baker, 140 Ore. 600, 613).” (Ibid., p. 526.)
America, indeed, would be the loser, if it failed to encourage and promote its gifted children in schools taught by learned and dedicated teachers.
Judgment granted to respondents against petitioner confirming the determination in whole and dismissing the proceeding on the merits, without costs.