WEST HILL BAPTIST CHURCH *v.* ABBATE ET AL.

(No. 269948—Decided May 19, 1969.)

Common Pleas Court of Summit County.

*Mr. Stanley F. Klein,* for plaintiff.

*Mr. Robert S. Carabell, Mr. Theodore C. Gregory, Mr. Dennis H. Markusson* and *Mr. Allan Johnson,* for defendants.

CRAMER, J. The plaintiff seeks a declaratory judgment declaring that certain restrictive covenants appearing in the chain of title of its real estate be declared invalid and unenforceable. United in interest with the plaintiff and seeking the same relief as does plaintiff, but seeking it by way of cross-petitions and joined as defendants here, are Adath Israel Anshe Sfard (hereinafter referred to as Anshe Sfard) and the Maronite Club of Akron, Ohio. These latter defendants are owners of land in the area involved, each seeking to erect houses of worship thereon.

Only certain of all the defendants have filed pleadings and are resisting the declaration sought by plaintiff and cross-petitioners. These will be referred to as the James defendants, their counsel herein being Thomas C. Gregory.

There are two sets of covenants affecting the lands in question, one herein referred to as the Wright restrictions —recorded May 29, 1952, and the other herein referred to as the Vaughn restrictions.

The Wright restrictions covered a sizeable tract of land which has been subdivided into several areas. The Vaughn restrictions cover a smaller tract of land within the original Wright area. The land now owned by Anshe Sfard (also perhaps referred to herein as the Synagogue) is situated in a area covered by the Wright restrictions and partly by the Vaughn restrictions. The Maronite Club property is covered both by the Wright and Vaughn restrictions. This is also true as to the land of plaintiff.

The Wright restrictions seem to limit the use of land located therein to residential and agricultural and the Vaughn restrictions purport to limit the use of land located therein to agricultural and single family residential use. Both sets of restrictions contain provisions as to lot sizes, frontage, building setbacks and minimum structure size.

Both plaintiff and the cross-petitioning defendants, though claiming that both sets of restrictions are no longer valid, apparently seek only a declaration which will permit the construction of the churches and synagogue on the parcels involved. They, however, are by no means abandoning their claims as to the invalidity of both sets of claims.

The pleadings and the evidence raise the issue as to whether the plaintiff, The Maronite Club and Anshe Sfard, as property owners and religious organizations, have the right to construct and operate their respective churches and synagogue thereon notwithstanding the existence of two sets of restrictive covenants which prohibit the use of their property for other than single family residence purposes.

It is first urged that the Wright restrictions have been previously held invalid by the Common Pleas Court of Summit County, Ohio. In support of this contention, during the trial of the cause, the journal entries of the court rendering the judgments in the cases wherein the Wright restrictions were held invalid were offered in evidence but were not admitted by the court. The parties not being the same as those in this cause the judgments of the court in these previous actions are not res adjudicata. Therefore, we cannot and do not find that the Wright restrictions are invalid on the basis of those previous determinations.

It is next urged that those who seek the enforcement of the restrictive covenants, and their predecessors, have for a long period of time, acquiesced in the violation of the restrictions and are, therefore, estopped from seeking their enforcement.

In this connection, it should be noted that the two churches already erected in the area are not on land affected by the Vaughn restrictions. In other words, the two churches which have been erected are located on land affected only by the Wright restrictions.

It is asserted that the erection of the two churches in the area having been assented to, the James group of defendants are in no position to complain respecting the erection of additional churches and are, therefore, es-

topped from the enforcement of the covenant restricting the building of any structure for a use other than residential. In this connection, it is asserted—with some justification under the evidence—that the existence of these churches in the area not only lulled the parties into feeling safe in purchasing their lands on which to erect churches and a synagogue but, in a sense, motivated them so to do. It cannot in actuality be said that an estoppel occurred, because the churches were built only after litigation and not with the consent of the complaining defendants and their predecessors. Their failure to make a defense to those actions and allowing the judgments therein to be taken by default cannot be considered in the nature of either consent or acquiescence.

It is also asserted that neither the Wright nor Vaughn restrictions are enforceable because they lack uniformity.

We are unable to so conclude for the reason that uniformity does exist in that the restrictions are uniform in respect to maintaining the areas covered by them for residential as opposed to church use. In any event, if lack of uniformity does exist, it should not and, therefore, cannot prevent the covenants' enforcement respecting the erection of a structure for other than a residential use.

It is further claimed that conditions have so changed since the inception of the covenants so as to render them of no value, invalid and, therefore, unenforceable.

It is our opinion that the evidence shows that the restrictive covenants are still of substantial value to those for whose benefit the covenants operate.

We are inclined to agree with this statement found in the case of *Misch* v. *Lehman,* 178 Mich. 225, 144 N. W. 556, cited and commented upon by counsel:

''The true rule seems to be that, even after one or more breaches, equity will grant relief if the restrictions can be shown to be of value to complainant, and such breaches have not resulted in a subversion of the original scheme of development resulting in a substantial, if not an entire, change in the neighborhood.''

In 20 American Jurisprudence 2d 885, ''Covenants,'' Section 319, it is stated in part:

"* * * It has been said that more is required to warrant such declaratory relief than is necessary when equity denies an injunction against violation of a restriction because of changed conditions, and that in the case of declaratory relief it must be established that the whole plan of development has become inoperative and that its object can no longer be carried out since if such relief is granted it nullifies the restrictions, at least in the plaintiff's title, for all time and purposes, even though future changes might completely remove the ground for doing so."

In 2 Anderson on "Declaratory Judgments" (2d Ed.) at page 1340 the following is found:

"Where a proceeding is brought under the declaratory judgment act to secure a decree adjudicating that restrictive covenants were of no force or effect such a proceeding differs from a suit in equity to enjoin a breach of the restrictions. In the latter case equity might refuse an injunction, and remit a plaintiff to an action at law for damages for a breach of such covenant, basing the refusal on the ground that an injunction would do great injury to the defendant and be of little value to the plaintiff, but the relief under a declaratory action, if granted, would nullify the covenants, at least as to the plaintiff's title for all time and purpose, even though future changes might completely remove the ground for doing so. More is required to warrant such a decree in a declaratory action than is necessary when only the injunctive powers of a court of equity are called into action. It must be established in the declaratory action that the whole plan has become inoperative and that its objects can no longer be carried out."

At page 1343 it is further stated:

"The principle that may be drawn from the foregoing discussion is to the effect that a declaratory judgment nullifying restrictive covenants may be sustained only because a radical change has rendered restrictions inoperative, and differs greatly from an equitable injunctive decree refusing to enforce restrictions which may rest upon lesser change of conditions and greater relative injury to the defendant.

"It is, however, at this time generally recognized that

a declaratory action will lie to remove outmoded building restrictions. Differently stated, as a general rule it may be said that a declaratory action will lie to annul building restrictions due to changes in surroundings where such changes make such restrictions unjust, oppressive or inequitable.

"A declaratory judgment affecting building restrictions will be granted with great caution in any case, and only when the motivating considerations are not only ample to warrant the relief, but so settled and lasting that the purpose of the original restriction has manifestly been permanently frustrated, and the change must be so great as clearly to neutralize any anticipated benefits of the restriction to the point of defeating the covenants' objects and purposes."

Thus it would appear that before this particular claim can be said to have been sustained it must be shown that a radical change has rendered the restrictions inoperative. This we cannot find from the evidence.

The defendant Maronite Club asserts that it is not bound by the Vaughn restrictions because it had no notice thereof.

We have no difficulty in concluding from the evidence that this defendant did have that notice provided by law which charges it with knowledge of the Vaughn restrictions. However, even in the absence of notice of such restrictions, still it is bound by the notice which admittedly it had of the Wright restrictions in so far as the same applied to its land.

We come now to a consideration of the claim that the restrictions are, as they relate to houses of worship, violative of the Constitutions of the United States and of Ohio.

Zoning is the exercise of police power regulating and controlling the uses of real property. Restrictive covenants, with which we are here dealing, and which, of course, purport to control the use of real property are in the nature of private zoning or zoning by contract.

Restrictive covenants do not supersede or in any way affect the requirements of a zoning ordinance. They may

be less restrictive than the ordinance and, if so, the ordinance prevails and if the restrictive covenant is more restrictive than the ordinance the covenant prevails but, in either case, the ordinance is enforceable. The ordinance cannot abrogate or impair or enlarge the effect of a restrictive covenant and a valid covenant is not terminated or nullified by the enactment of a zoning ordinance nor is the validity of a restriction thereby affected (See 20 American Jurisprudence 2d 837 and 838).

It would follow, however, that if a zoning ordinance is, in its operation, unconstitutional, a restrictive covenant in the same area having the same effect would likewise be unconstitutional.

In *Shelley* v. *Kraemer*, 334 U. S. 1, the court declared:

"That the action of state courts and of judicial officers in their official capacities is to be regarded as action of the state, within the meaning of the 14th Amendment * * *"

Therefore, if this court were to enforce (by declaratory judgment) the restrictive covenants here we would be engaging in state action.

In a majority of the states, churches cannot be wholly excluded from residential districts (through zoning legislation) because the courts have held that, under the circumstances, such exclusion amounts to unfair discrimination and, in any event, is contrary to the public welfare as a general rule, thus being an arbitrary and unauthorized exercise of the police power by the local authorities. See 81 Harvard Law Review 338, and the citations referred to therein.

The courts have considered that the private enjoyment of surrounding property and maintenance of its economic value are not considered important enough to require exclusion of religious uses.

It has also been held that a zoning ordinance which prohibits the use of certain residential land for church purposes does not bear any substantial relation to public health, safety, morals and general welfare and, therefore, is violative of constitutional rights. See *State, ex rel. Synod of Ohio of United Lutheran Church in America*, v.

*Joseph,* 139 Ohio St. 229. Also *Young Israel Organization of Cleveland* v. *Dworkin,* 105 Ohio App. 89. The annotation found in 74 A. L. R. 2d 377 furnishes ample authority for the foregoing proposition.

Thus, it seems to us, that covenants such as those here in issue, which seek to limit an area to residential use only, thereby barring churches, would be unconstitutional as to houses of worship if they were in the form of zoning ordinances or resolutions rather than covenants.

Our question then is: Are such restrictive covenants which bar churches and synagogues from areas unconstitutional as to such institutions?

The concept of substantive due process, to have meaning, would require, in our opinion, a holding that if a zoning law which excludes churches is unconstitutional for that reason, a restrictive covenant accomplishing the same purpose likewise would be unconstitutional. Is such a restrictive covenant insulated against unconstitutionality because it is the result of a private agreement?

In *Kraemer supra,* the United States Supreme Court held that judicial enforcement by a state court of a restrictive covenant excluding persons from purchasing real property because of their race or color was unconstitutional as state action within the prohibition of the 14th Amendment and thereby violated due process and equal protection of law.

It would thus appear that the rationale of *Kraemer, supra,* applies with equal force here. In 70 Harvard Law Review at page 1438 we find the following:

"Since restrictive covenants rarely include an area large enough to preclude all reasonable alternative locations, the question whether the enforcement of a covenant excluding churches is unconstitutional under *Shelley* as a restriction of the free exercise of religion is not likely to arise. But if the issue were squarely presented a restriction of the free exercise of religion might be regarded as sufficiently analogous to the situation involved in *Shelley* v. *Kraemer* to justify characterizing the enforcement of the restrictive covenant as invalid state action."

The right of freedom of religion safeguarded by the First Amendment to the Federal Constitution has been brought within the protection of the 14th Amendment to the Constitution of the United States. The fundamental concept of liberty embodied in the 14th Amendment embraces the liberties guaranteed by the First Amendment.

It is conceivable that to relegate houses of worship to areas other than those here in question thereby excluding them from residential districts not as fully populated would result in imposing a burden on the free right to worship and could conceivably result in prohibiting altogether the exercise of that right.

In the case of *Cantewell* v. *Connecticut*, 310 U. S. 296, it was stated that:

"It cannot be left to the uncontrolled discretion of any public official as to when, where and under what conditions a religious organization may build a church or maintain a place of assembly."

It has also been said that although the Supreme Court of the United States has been strict in its prohibition of prior restraint on the exercise of freedom of religion, it has been held that reasonable regulations of time and place for the exercise of such freedoms are valid.

Here, these restrictive covenants came as a result of the "uncontrolled discretion" of private individuals thus resulting in their unreasonable regulation of "time and place" for the exercise of religion by those coming into the area affected by the restrictions.

While it is true, of course, that when the effect of such a covenant upon the exercise of one's freedom of religion is small and the public interest to be protected is substantial such freedom is to give way to the public interest, that situation does not here exist. The private interests of the individuals, parties to the restrictive covenants, as distinguished from the public interest, were their chief and perhaps only concern. It is claimed the evidence shows that the excessive noise and increased traffic hazards engendered by the erection of three additional places of religious worship will occur, so that the public interest and

welfare must be balanced against the freedom. We do not find that the evidence discloses that such results will take place to the extent claimed. In the words of the court in the *Joseph case, supra*:

"It must, therefore, be concluded that respondents' supporting reasons for the attempted exclusion of the church cannot be justified on the score of the protection of the public health and safety."

The appearance of discrimination in favor of certain religious denominations (the two churches already in existence in this area) and against the plaintiff and cross-petitioners is given by the existence of these churches. Thus, though not, as we have said, evidence of acquiescence, the presence of these two churches in this area indicates that a choice was made by the beneficiaries of the covenant between denominations.

It is our conclusion that the enforcement of these covenants which would result in prohibiting the use by the plaintiff and the cross-petitioners of their property for the erection thereon of houses of worship, would constitute state action (through this court) violative of the free exercise of religion provision of the First Amendment of the Constitution of the United States and of comparable provisions of the Constitution of Ohio and against public policy, and that such action bears no reasonable relationship to the public health, safety, morals and general welfare.

We, therefore, declare that such restrictive covenants are not enforceable, so as to prevent the use of the properties of plaintiff and cross-petitioners to which they seek to put them, namely, the erection and maintainace of churches and a synagogue and all structures necessary to be used in connection therewith.

*Judgment for plaintiffs.*